# Exhibit "A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| COINTERRA, INC., | § | Case No. 15-10109-HCM-7 |
| | § | |
| Debtor. | § | |

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

| | |
|---|---|
| STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF SAN DIEGO | § |

BEFORE ME, the undersigned authority, on this day personally appeared Affiant, who being by me first duly sworn, upon his oath deposed and stated as follows:

"My name is Rick Fink. I am over the age of eighteen years, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein.

"At all times material to the transactions between Fortis Advisors LLC, as Collateral Agent for the ratable benefit of the Lenders under certain Transaction Documents as defined in the Cointerra, Inc. Security and Pledge Agreement[1] (hereinafter "**Collateral Agent**") and Cointerra, Inc. (hereinafter "**Debtor**"), I have been the CEO and Managing Director of Fortis Advisors, with personal knowledge of the matters concerning the security agreement executed by Debtor and Collateral Agent, for the ratable benefit of the Lenders, on August 14, 2014, but effective as of August 1, 2014 (hereinafter "**Security Agreement**"), and the UCC Financing Statement filed on behalf of the Collateral Agent, for the ratable benefit of the Lenders, in the office of the Delaware Secretary of State relating to the Security Agreement.

"I am a custodian of the records of Fortis Advisors LLC. I have knowledge of the facts and circumstances contained in this affidavit as a result of my position with Fortis Advisors LLC, my personal involvement with the transactions between the Collateral Agent and the

---

[1] Any capitalized terms not defined herein are as defined in the Cointerra, Inc. Security and Pledge Agreement, the Collateral Agent Agreement and multiple Secured Convertible Notes all dated August 1, 2014.

Debtor, my review of the corporate records of the Collateral Agent and information given to me by others, all of which I believe to be true and correct.

"Attached hereto by means of attaching the marked the Proof of Claim, filed by the Collateral Agent, for the ratable benefit of the Lenders, in Debtor's bankruptcy case on March ___, 2015as Exhibit "1" are the Note Purchase Agreement, Security Agreements, the UCC Financing Statement and Deposit Account Control Agreement executed by the Collateral Agent, for the ratable benefit of the Lenders, the Debtor and Bank of America, N.A., all from the Collateral Agent's records. These records are kept by Fortis Advisors LLC in the regular course of business, and it was the regular course of business for an employee or representative with knowledge of the act, event, condition or opinion recorded to make the record or to transmit the information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the originals.

"The Security Agreements were given by Debtor to the Collateral Agent, for the ratable benefit of the Lenders, in consideration for the extension of credit to Debtor by the Collateral Agent, for the ratable benefit of the Lenders. At the time Debtor filed its bankruptcy petition it owed the Collateral Agent, for the ratable benefit of the Lenders, $4,560,154.66.

"The Collateral Agent is unaware of any other party asserting an interest in the collateral, save specifically for those which are subject to Future Electronics' prior filed PMSI as to specific equipment and inventory, among other things. A list of the Collateral Agent's collateral types is detailed in Schedule B filed by the Debtor.

"The data made available to the Collateral Agent, regarding the value of the collateral to which secures the Debtor's collective obligation to the Lenders, detailed in the Motion for Relief from the Automatic Stay to which this affidavit is appended, is that the sum of the probable liquidation values of the all of the collateral referenced above by normal and customary means in this industry, as of the Petition Date and to the date of the execution of this Affidavit, is substantially less than the $4,560,154.66 owed to the Lenders as of the Petition Date.

"I have read the above and foregoing affidavit, and every statement contained therein and herein is within my personal knowledge and is true and correct."

"Further, affiant sayeth not."

**FORTIS ADVISORS LLC**

By: _Rick Fk_____
       Rick Fink


SUBSCRIBED AND SWORN TO BEFORE ME on the _19th_ day of March, 2015, to certify which witness my hand and official seal.

SARA MARIE BUNNING
Commission # 2009268
Notary Public - California
San Diego County
My Comm. Expires Mar 1, 2017

_Sara Be_____
Notary Public

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT _____ District of _____ | PROOF OF CLAIM |
|---|---|

| Name of Debtor: | Case Number: | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

**COURT USE ONLY**

Name and address where notices should be sent:

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:_____**
   (*If known*)

Filed on:_____

Telephone number:                email:

Name and address where payment should be sent (if different from above):

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:                email:

**1. Amount of Claim as of Date Case Filed:**  $_____

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❏Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

Collectively filed proof of claim for 48 Lenders set forth in Exhibit "A" per their initial principal balances.

**2. Basis for Claim:** _____
   (See instruction #2)

See attached Exhibits "B"-1 - "B"-6 for details

| **3. Last four digits of any number by which creditor identifies debtor:** __ __ __ __ __ | **3a. Debtor may have scheduled account as:** _____ name (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ (See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏Real Estate  ❏Motor Vehicle  ❏Other
**Describe:**

**Value of Property:** $_____ unknown

**Annual Interest Rate_____% ❏Fixed  or  ❏Variable**
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

Atty's fees

$_____ pre-petition

**Basis for perfection:** _____

**Amount of Secured Claim:**  $_____ unknown

**Amount Unsecured:**  $_____ likely significant

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

**Amount entitled to priority:**

$_____

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)                                                                                                                2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:    See attached Exhibits "B"-1 through  "B"- 7

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.       ☐ I am the trustee, or the debtor,     ☐ I am a guarantor, surety, indorser, or other codebtor.
                        by virtue of Collateral Agency            or their authorized agent.           (See Bankruptcy Rule 3005.)
                                                                   (See Bankruptcy Rule 3004.)
                        Agreement dated 8/1/2014
I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Rick Fink
Title:          CEO and Managing Director
Company:      Fortis Advisors, LLC (Collateral Agent)
Address and telephone number (if different from notice address above):          (Signature)                                    (Date)    3|17|15

Telephone number:                     email:  rfink@fortisrep.com
        *Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# Exhibit "A"

| Name and Address of Purchaser | Principal | Registration |
| --- | --- | --- |
| 101049658 SK Ltd.<br>518 Queen St<br>Saskatoon SK S7K 0M5 | 25,000.00 | NBCN Inc. ITF 101049658 SK Ltd., Acct 4EH378A<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Dr. James McHattie Medical Prof. Corp.<br>1821 Rose St<br>Regina SK S4P 1Z7 | 25,000.00 | NBCN Inc. ITF Dr. James McHattie Medical Prof Corp, Acct 4EH122A<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Rodney Koch<br>PO BOX 151<br>Edenwold SK S0G 1K0 | 40,000.00 | NBCN Inc. ITF Rodney Koch, Acct 4EH110E<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| T.Thiessen M.D.Surgical Prof Corp<br>247 Lakeshore Pl<br>Saskatoon SK S7J 3T7 | 54,000.00 | NBCN Inc. ITF T. Thiessen M.D. Surgical Prof Corp, Acct 4EH623E<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Dorothy Platzer<br>401 Dalhousie Cres<br>Saskatoon SK S7H 3S3 | 40,000.00 | NBCN Inc. ITF Dorothy Platzer, Acct 4EH104B<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Brian Gibbs<br>PO Box 29004<br>111-1715 Preston Ave N<br>Saskatoon SK S7N 4V2 | 50,000.00 | NBCN Inc. ITF Brian Gibbs, Acct 4EH035E<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Kevin Thompson<br>414 Victor Place<br>Saskatoon SK S7T 0E2 | 10,000.00 | NBCN Inc. ITF Kevin Thompson, Acct 4EE498A<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Philip Armstrong PH 77 Avenue Rd Toronto On M5R 3R8 | 100,000.00 | NBCN Inc. ITF Philip Armstrong Acct 4EDO89F<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Mel Glickman Architect,<br>378A Beresford ave , Toronto On M6S 3B5 | 100,000.00 | NBCN Inc. ITF Mel Glickman Architect Acct 4ELJ28F<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |
| Mark Wayne, 155 Waterloo Dr SW, Calgary AB T3C 3G4 | 250,000.00 | NBCN Inc. ITF Mark Wayne Acct 4EE211F<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 |

| | | |
|---|---|---|
| Felcom Capital Corp 26 Wellington Street East Suite 910 Toronto ON M5E 1S2 | 25,000.00 | NBCN Inc. ITF Felcom Capital Corp, Acct 4ea937f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Anita Berkis 26 Wellington Street East Suite 910 Toronto ON M5E 1S2 | 25,000.00 | NBCN Inc. ITF Anita Berkis, Acct 4ea938f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Donald S McFarlane 26 Wellington Street East Suite 900 Toronto ON M5E 1S2 | 100,000.00 | NBCN Inc. ITF Donald S McFarlane, Acct 4ee586f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| James Ward Timothy Witzel 932 Victoria Street North Kitchener ON N2B 1W4 | 50,000.00 | NBCN Inc. ITF James Ward Timothy Witzel, Acct 4ea875f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Maxillo-Care Inc 2891 Ridge Road West RR # 2 RPO Shanty Bay ON L0L 2L0 | 25,000.00 | NBCN Inc. ITF Maxillo-Care Inc, Acct 4ea656f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| David Gargaro 9 Hyland Ave Etobicoke ON M8X 1P8 | 25,000.00 | NBCN Inc. ITF David Gargaro, Acct 4ea764e 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Ward Seymour, 81 Stainway Blvd, Etobicoke On M9W 6H6 | 50,000.00 | NBCN Inc. ITF Ward Seymour, Acct 4ea054f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Thomas J Rice, 342 Country Club Blvd. Winnipeg MB R3K 1X6 | 50,000.00 | NBCN Inc. ITF Thomas J Rice, Acct 4eb620f1010 Rue De la Gauchetiere OuestMezzanine 100Montreal, QC H3B 5J2 |
| J David Bunston,46 Bernard Ave, Toronto On M5R 1R2 | 25,000.00 | NBCN Inc. ITF J David Bunston, Acct 4ea200e 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Joseph Conway, 49 Nanton Ave, Toronto On M4W 2Y8 | 100,000.00 | NBCN Inc. ITF Joseph Conway, Acct 4ea247f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |

| | | |
|---|---|---|
| Purling Holdings, 9 Wakefield Cres Scarborough ON M1W 2C1 | 60,000 | NBCN Inc. ITF Purling HoldingsAcct.#4EB713F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| JA Developments. 14689 Bathurst St. Aurora On L4G 7A4 | 35,000 | NBCN Inc. ITF JA Developments Acct.#4eb720F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Lorne Waldman, 281 Eglinton Ave E. Toronto ON M4P 1L3 | 35,000 | NBCN Inc. ITF Lorne Waldman Acct.#4eb766F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Jane Day, 36 Rosedale Rd, Toronto On M4W 2P6 | 60,000 | NBCN Inc. ITF Jane Day Acct.#4eda04e 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Steedco, 796217 Grey Rd Blue Mountains On L9Y 0R1 | 25,000 | NBCN Inc. ITF Steedco Acct.#4EB743B 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Peter Avery, 146 bathurst St. Aurora On L4G 7A4 | 35,000 | NBCN Inc. ITF Peter Avery Acct.#4edn50F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Robert Hannah, 26 Wellington St E Suite 900 Toronto On M5E 1S2 | 26,000 | NBCN Inc. ITF Robert Hannah Acct: 4EE078F 1010 de la Gauchetiere West Mezzanine 100 Montreal QC, H3B 5J2 |
| Marquest -501 | 210,000.00 | RBC Investors Services Trust in Trust for a/c#011800030 |
| Marquest -571 | 115,000.00 | RBC Investors Services Trust in Trust for a/c#162142001 |
| Michael Shannon,2860 Hill Park Rd Montreal QC H3H 1T1 | 200,000.00 | Laurentian Bank Securities Inc. 1981, ave McGill College, Suite 1900 Montreal (Quebec) H3A 3K3 |
| Jason Mann | 145,000.00 | Mackie Research Capital Corp. ITF Jason Mann, 199 Bay Street, Suite 4500 Commerce Court West Box 368 Toronto On M5L 1G2 |

| | | |
|---|---|---|
| Brad White, 3 May St, Toronto On M4W 2X9 | 250,000.00 | GMP Securities LP ITF 400-NHR0-F, 145 King St. W Suite 300 Toronto On M5H 1J8 |
| 2026860 Ontario Inc. 606-77 Avenue Rd, Toronto On M5R 3R8 | 100,000.00 | GMP Securities LP ITF 610-PC90-B, 145 King St. W Suite 300, Toronto On M5H 1J8 |
| Helen Dittmer, 78 Sunset Way SE Calgary AB T2X 3C1 | 50,000.00 | GMP Securities L.P. ITF A/C 610-AWS0-F , 145 King St. W Suite 300, Toronto On M5H 1J8 |
| Darren Dittmer or Ellen Shong Leong 308 Hidden Ranch Circle NW Calgary AB T3A 5R2 | 25,000.00 | GMP Securities L.P. ITF A/C 610-ZTN0-B , 145 King St. W Suite 300, Toronto On M5H 1J8 |
| Gisela Wsaibel, 1385 Crestwell Rd West Vancouver BC V7V 3N6 | 100,000.00 | GMP Securities L.P. ITF A/C 610-B0R0-F 145 King St. W Suite 300, Toronto On M5H 1J8 |
| Paloduro Investments | 500,000.00 | Paloduro Investments Inc. 1560 - 505 Burrard St. Vancouver BC V7X 1M5 |
| Clarence LP | 500,000.00 | Clarence LP c/o Wicklow Capital, Inc.53 W. Jackson Blvd. Suite 1204, Chicago IL 60604 |
| Serenity Investments LLC | 250,000.00 | Serenity Investments LLC 830 North Boulevard Oak Park, IL 60301 |
| David G P Allan | 50,000.00 | David G P Allan 90 Winchester St T oronto, ON Canada M4X 1B2 |
| Michael Rauchman | 75,000.00 | Hedgehog Advisors, LLC 1584 Dawn Ct, Long Grover, IL 60047 |
| Derek Anderson | 35,000.00 | Derek Anderson 6179 Iris Way Arvada, CO 80004 |
| Bart R McDonough | 100,000.00 | Certifiable Solutions, LLC 201 David L Boren Blvd, Suite 250 Norman, OK 73072 |
| Jane Day, 36 Rosedale Rd Toronto On M4W 2P6 | 40,000.00 | NBCN Inc. ITF Jane Day a/c #4eda04f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| JA Developments, 17 Autumn Way, Aurora On L4G 4P2 | 40,000.00 | NBCN Inc. ITF 4eb720F a/c # 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |

| | | |
|---|---|---|
| Tom Kritsch, 504-10 Bay St E Thornbury On N0H 2P0 | 50,000.00 | NBCN Inc. ITF 4eb962F a/c # 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| 682501 Alberta Ltd. 26 Wellington st E Suite 920 Toronto ON M5E 1S2 | 50,000.00 | NBCN Inc. ITF a/c # 4ec880F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 |
| Dana Gilman | 100,000.00 | Fidelity Clearing Canada ULC ITF A/C D12-DGC0-E, 200-483 Bay St, South Tower, Toronto, ON, M5G 2N7 |
| Total | **$4,430,000.00** | |

# Exhibit "B"-1

## Collateral Agent Agreement

*EXECUTION VERSION*

# COLLATERAL AGENT AGREEMENT

This COLLATERAL AGENT AGREEMENT (this "*Agreement*"), dated as of August 1, 2014, is made by and among each of Lenders (as defined below), Fortis Advisors LLC, a Delaware limited liability company, as collateral agent for the ratable benefit of the Lenders (as defined below) (together with its successors and permitted assigns, the "*Collateral Agent*"), CoinTerra, Inc., a Delaware corporation (together with its successors and permitted assigns, "*Borrower*") and the direct and indirect subsidiaries of Borrower listed on the signature pages hereto (together with their respective successors and permitted assigns) (collectively, "*Guarantors*", and each, a "*Guarantor*"; and together with Borrower, collectively, "*Obligors*", and each, an "*Obligor*").

## RECITALS

A.      Pursuant to that certain secured note purchase agreement dated as of the date hereof, by and between Lenders and Borrower (as amended, supplemented or otherwise modified from time to time, the "*Purchase Agreement*"), Borrower will issue, and the Lenders will purchase, secured convertible notes payable to Lenders, as more particularly described on Schedule I (collectively, the "*Notes*").

B.      It is a condition to the execution of the Purchase Agreement and the issuance and purchase of the Notes that (i) Guarantors execute and deliver a guarantee, pledge and security agreement dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "*Guarantee*"), in favor of Collateral Agent, pursuant to which each Guarantor is, among other things, agreeing to guarantee the full, complete and final payment and performance of the Grantor Obligations (as defined below) and granting to Collateral Agent, among other things, a lien on, and security interest in, the Collateral (as defined below) owned by such Guarantors as security for the Grantor Obligations, and (ii) Borrower executes and delivers a security and pledge agreement dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "*Security Agreement*"), and an intellectual property security agreement dated as of the date hereof (as amended, supplemented or otherwise modified from time to time, the "*IP Security Agreement*"), each in favor of the Collateral Agent, pursuant to which Borrower is, among other things, granting to Collateral Agent  a lien on, and security interest in, the Collateral owned by Borrower as security for the Obligations (as defined below).

C.      Lenders desire that Fortis Advisors LLC act as collateral agent for the ratable benefit of the Lenders in respect of the Collateral, as more fully provided in this Agreement, and Lenders and Collateral Agent are entering into this Agreement to, among other things, further define the rights, duties, authority and responsibilities of Collateral Agent and the relationship among Lenders regarding their *pari passu* interests in the Collateral.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1.  DEFINED TERMS.

Section 1.1  <u>Definitions</u>.  All capitalized terms used herein and not defined herein have the meanings ascribed thereto in the Security Agreement.  As used in this Agreement, the following terms shall have the following meanings:

"*Acknowledgment*" means an acknowledgment of and consent and agreement to collateral agent agreement in the form attached hereto as Exhibit "A".

"*Affiliate*" means, with respect to a specified Person, another Person that, directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with the Person specified.

"*Agent*" has the meaning specified in <u>Section 4.12</u>.

"*Agreement*" has the meaning specified in the introductory paragraph.

"*Amendment Evidence*" has the meaning specified in <u>Section 4.12</u>.

"*Borrower*" has the meaning specified in the introductory paragraph.

"*Collateral*" means any and all security for the payment or performance of the Obligations and/or the Grantor Obligations, including, without limitation, "Collateral" as defined in the Security Agreement, "Collateral" as defined in the Guarantee and Intellectual Property Collateral as defined in the IP Security Agreement.

"*Collateral Agent*" has the meaning specified in the introductory paragraph.

"*Collateral Documents*" means the Transaction Documents, any mortgage or deed of trust and each other security document or pledge agreement delivered in accordance with applicable local or foreign law to grant a valid Lien in any property, and all UCC or other financing statements or instruments of perfection required by any of the foregoing to be filed with respect to any Lien in property and fixtures created pursuant to the foregoing and any other document or instrument utilized to pledge as collateral for any of the Obligations or Grantor Obligations any property of whatever kind or nature or to perfect such Lien.

"*Event of Default*" shall mean (i) an Event of Default (as defined in the Notes) or (ii) any failure by any Obligor to perform any obligation or covenant of such Obligor under any Collateral Document and such failure to perform remains unremedied for a period of five (5) days or such shorter period as is expressly provided for such obligation or covenant pursuant to such Collateral Document.

"*Expense Deposit Account*" has the meaning specified in <u>Section 2.6(a)</u>.

"*Expense Notice*" has the meaning specified in <u>Section 2.6(a)</u>.

2

"*Expenses*" has the meaning specified in <u>Section 2.6(a)</u>.

"*Grantor Obligations*" has the meaning given to such term in the Guarantee.

"*Guarantors*" has the meaning specified in the introductory paragraph.

"*Guarantee*" has the meaning specified in <u>Recital B</u>.

"*Holdback Amount*" has the meaning specified in <u>Section 4.12</u>.

"*IP Security Agreement*" has the meaning specified in <u>Recital B</u>.

"*Lenders*" shall mean, collectively, the holders of the Notes issued pursuant to the Purchase Agreement, initially identified as such on <u>Schedule I</u> to this Agreement and any Person who may from time to time acquire Notes issued pursuant to the Purchase Agreement, in each case, including their successors and assigns. <u>Schedule I</u> to this Agreement shall be modified to reflect additional Lenders and additional amounts advanced by the Lenders from time, which modifications shall not be deemed an amendment.

"*Lien*" has the meaning given to such term in the Purchase Agreement.

"*Notes*" has the meaning specified in <u>Recital A</u>.

"*Obligations*" has the meaning given to such term in the Security Agreement.

"*Obligors*" has the meaning specified in the introductory paragraph.

"*Purchase Agreement*" has the meaning specified in <u>Recital A</u>.

"*Requisite Lenders*" means holders of not less than a majority of the outstanding principal amount of the Notes.

"*Security Agreement*" has the meaning specified in <u>Recital B</u>.

"*Transaction Documents*" has the meaning given to such term in the Security Agreement.

Section 1.2  <u>Certain Other Terms</u>.

(a) The words "herein," "hereof," "hereto" and "hereunder" and similar words refer to this Agreement as a whole and not to any particular article, section, subsection or clause in this Agreement.

(b) References herein to an exhibit, article, section, subsection or clause refer to the appropriate exhibit, article, section, subsection or clause in this Agreement.

3

(c) The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(d) Any reference in this Agreement to a document shall include all appendices, exhibits and schedules thereto, and, unless specifically stated otherwise, all amendments, restatements, supplements or other modifications thereto, and as the same may be in effect at any and all times such reference becomes operative.

(e) The term "including" means "including without limitation" except when used in the computation of time periods.

(f) References in this Agreement to any statute shall be to such statute as amended or modified and in effect from time to time.

## ARTICLE 2. COLLATERAL AGENT.

Section 2.1 <u>Authorization and Action</u>. Lenders hereby appoint and designate Fortis Advisors LLC as collateral agent for the ratable benefit of the Lenders under the Collateral Documents and Fortis Advisors LLC hereby accepts such appointment and designation on the terms and conditions set forth herein and acknowledges that it holds the Collateral and acts hereunder and under the Collateral Documents as agent for the ratable benefit of the Lenders. Lenders hereby authorize and direct Collateral Agent to (a) enter into all of the Collateral Documents for the ratable benefit of the Lenders in accordance with the terms hereof and thereof, (b) exercise such rights and powers under this Agreement, the Notes or the Collateral Documents, as the case may be, as are specifically granted or delegated to Collateral Agent by the terms hereof and thereof, together with such other rights and powers as are reasonably incidental thereto or as are customarily and typically exercised by agents performing duties similar to the duties of Collateral Agent hereunder and thereunder, subject, however, to any express limitations set forth herein or therein, and (c) perform the obligations of Collateral Agent hereunder and under the Notes and the Collateral Documents. Lenders hereby agree to be bound by the provisions of the Notes and the Collateral Documents. The duties of Collateral Agent shall be deemed ministerial and administrative in nature, and Collateral Agent shall not have, by reason of this Agreement, the Notes or any of the Collateral Documents, a fiduciary relationship with any Lender, Obligor or their respective Affiliates.

Section 2.2 <u>Enforcement of Obligations and Grantor Obligations by Collateral Agent</u>.

(a) Collateral Agent, shall from time to time take such action for the protection and enforcement of its rights under this Agreement and under the Notes and the Collateral Documents as may be necessary or appropriate and in the interests of Collateral Agent and Lenders, <u>provided</u> that:

(i) unless and until Collateral Agent is notified in writing signed by the Requisite Lenders or any Obligor that an Event of Default shall have occurred and be continuing, Collateral Agent shall not take any action under this Agreement or any Collateral

4

Document except for the performance of such duties as are specifically assigned to Collateral Agent herein and in the Collateral Documents and except as may be requested from time to time in writing signed by the Requisite Lenders;

(ii) Collateral Agent shall not be deemed to have knowledge of the existence of any condition or event which constitutes a default or an Event of Default, and may act as if no Event of Default exists, unless notified in writing by the Requisite Lenders or by any Obligor, which notice shall expressly indicate that the specified condition or event is an Event of Default; and

(iii) if and so long as an Event of Default shall have occurred and be continuing and Collateral Agent shall have been notified in writing thereof in accordance with Section 2.2(a)(i) above, Collateral Agent shall exercise such rights, powers and remedies (whether vested in it by this Agreement or any Collateral Document or by law or in equity or by statute or otherwise) for the protection and enforcement of its rights under this Agreement and the Collateral Documents as it may be directed in a written instrument signed by the Requisite Lenders, subject to Section 2.2(d).

(b) Except as otherwise provided in this Agreement or any Collateral Document, each Lender acknowledges and agrees that (i) it shall only have recourse to the Collateral through Collateral Agent and that it shall have no independent recourse to the Collateral and (ii) Collateral Agent shall have no obligation to, and shall not, take any action hereunder or under any Collateral Document except upon instructions from the Requisite Lenders in accordance with Section 2.2(d). Provided that, nothing contained in this Agreement shall restrict (A) the rights of any Lender to pursue remedies, by proceedings in law and equity, or to enforce its rights in accordance with the provisions of Notes or any other Collateral Document, to the extent that pursuit of such remedies or enforcement does not relate to the Collateral or interfere with Collateral Agent's ability to take action hereunder or under the Collateral Documents or (B) the rights of any Lender to initiate an action or actions in any bankruptcy, reorganization, compromise, arrangement, insolvency, readjustment of debt, dissolution or liquidation or similar proceeding in its individual capacity and to appear or be heard on any matter before the bankruptcy or other applicable court in any such proceeding, including with respect to any question concerning the post-petition usage of any of the Collateral and post-petition financing arrangements.

(c) No Lender shall contest the validity, perfection, priority or enforceability of, or seek to void, any Lien securing any of the Obligations, and each party hereby agrees to cooperate, at no cost to Collateral Agent, in the defense of any action contesting the validity, perfection, priority or enforceability of any such Lien. No Lender shall have the right to obtain any of the Collateral or the benefit of any Lien on any property of any Obligor solely in respect of the Obligations owing to such Lender or any group of Lenders comprised of less than all Lenders.

(d) Unless otherwise excused as provided herein, Collateral Agent shall act on all written instructions received from the Requisite Lenders, with respect to any action to be taken

5

or not to be taken in connection with this Agreement or the Collateral Documents, including actions to be taken in connection with an insolvency proceeding in respect of any Obligor.  Each of the Lenders covenants and agrees that only the Requisite Lenders shall have the right, but not the obligation, to undertake the following actions (it being understood that less than the Requisite Lenders hereby expressly waive the following rights that they may otherwise have under the Collateral Documents): (i) upon the occurrence and during the continuance of any Event of Default, the Requisite Lenders may instruct Collateral Agent to proceed to protect, exercise and enforce, on behalf of all the Lenders, their rights and remedies under the Collateral Documents against Borrower and/or any other Obligor(s) and such other rights and remedies as are provided by law or equity; (ii) the Requisite Lenders may instruct Collateral Agent to provide, on behalf of all the Lenders, written notice to Borrower and/or any other Obligor(s) of the occurrence of any default or Event of Default under the Collateral Documents; and (iii) the Requisite Lenders may instruct Collateral Agent to waive, on behalf of all the Lenders, any Event of Default by written notice to Borrower and the other Lenders.  If Collateral Agent shall request instructions from Lenders with respect to taking any particular action in connection with this Agreement, any of the Collateral Documents or any such Lien, Collateral Agent shall be entitled to refrain from taking such particular action unless and until it shall have received written instructions from the Requisite Lenders or all Lenders, as the case may be (in which event it shall be required to act in accordance with such written instructions unless otherwise excused as provided herein), and Collateral Agent shall not incur any liability to any Person for so refraining.  Without limiting the foregoing, no Lender shall have any right of action whatsoever against Collateral Agent as a result of Collateral Agent taking or not taking any action hereunder or pursuant to or in accordance with the written instructions of such required Lenders, except for Collateral Agent's own gross negligence or willful misconduct in connection with any action taken or not taken by it, as finally determined by a court of competent jurisdiction.  Notwithstanding anything to the contrary contained in this Agreement or any of the Collateral Documents, (i) the failure of Collateral Agent to take any action shall not constitute gross negligence or willful misconduct by Collateral Agent hereunder following a request by Collateral Agent for the Requisite Lenders' consent to such action and the failure of the Requisite Lenders to respond to such request, and (ii) Collateral Agent shall not be required to take any action that is, in its opinion (which may be, but is not required to be, based on the advice of legal counsel), contrary to applicable law or any of the Collateral Documents or that would, in its reasonable opinion, subject it or any Affiliate thereof, or any officer, director, employee, representative, attorney, accountant, consultant or any other professional, agent or expert at any time retained by Collateral Agent or any Affiliate of such Persons, to liability or that would require it to expend or risk its own funds.

Section 2.3   Application of Moneys by Collateral Agent.

(a) Absent the existence of an Event of Default, all moneys received by Collateral Agent or any Lender shall be applied as required by the Notes and this Agreement so that, notwithstanding anything to the contrary in any Collateral Document, all payments in respect of any principal of or interest on any of the Notes shall be shared by Lenders ratably in accordance with the aggregate amount of principal of and accrued interest on their respective Notes.

6

(b) Upon the occurrence of an Event of Default, all proceeds of the Collateral held or received by Collateral Agent (or any of the holders of the Notes) and any other payments received, directly or indirectly, by Collateral Agent (or any of the holders of the Notes) on or with respect to any Obligations or Grantor Obligations (including any payment in an insolvency proceeding and the proceeds from any sale of any Obligations or Grantor Obligations, or any interest therein to Borrower or any Affiliate of Borrower) shall be delivered to Collateral Agent and distributed as follows:

(i) first, to the payment of the costs and expenses of any exercise of the rights or remedies provided for hereunder or under the Collateral Documents, including reasonable compensation to counsel or any other agent for Collateral Agent and Lenders, and all expenses, liabilities and advances incurred or made by Collateral Agent and/or Lenders in connection therewith, and any other unreimbursed fees and expenses for which Collateral Agent and/or Lenders are to be reimbursed under the terms of the Collateral Documents;

(ii) second, to the ratable payment (based on the principal amount of the Notes outstanding at the time of distribution) of accrued but unpaid interest on the Notes;

(iii) third, to the ratable payment (based on the principal amount of the Notes outstanding at the time of distribution) of unpaid principal of the Notes;

(iv) fourth, to the ratable payment (based on the principal amount of the Notes outstanding at the time of distribution) of any other Obligations, until all Obligations shall have been paid in full; and

(v) finally, to payment to Borrower, or its successors or permitted assigns, or as a court of competent jurisdiction may direct, of any surplus then remaining from such proceeds.

(c) It is understood and agreed that Obligors shall remain liable to the extent of any deficiency between the amount of the proceeds of the Collateral and the aggregate amount of the Obligations and the Grantor Obligations.

Section 2.4  Delivery of Notices.  Collateral Agent shall deliver, at the expense of Borrower, to each Lender promptly upon receipt thereof, duplicates or copies of all notices, requests and other instruments received by Collateral Agent hereunder or pursuant to any Collateral Documents, but only to the extent that the same are not required by such document or agreement to have been furnished pursuant thereto to such Lender.

Section 2.5  Duties of Collateral Agent.

(a) Lenders' appointment of Fortis Advisors LLC as collateral agent and Fortis Advisors LLC's acceptance of such appointment, is subject to the following terms and conditions:

7

(i)  notwithstanding anything herein contained to the contrary, Collateral Agent shall not be obligated to take any action hereunder which might in its reasonable opinion involve it in any liability or expense in excess of the amount remaining in the  Expense Deposit Account;

(ii) Collateral Agent shall have no liability with respect to any action taken in accordance with a written request given as provided in <u>Section 2.2</u>, except that nothing contained herein shall relieve Collateral Agent from liability for its own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction;

(iii)Collateral Agent makes no representation and has no responsibility as to the validity or sufficiency of this Agreement, the Collateral Documents or the sufficiency of the Collateral;

(iv)in making any payment or in taking any action in respect of the Obligations, Collateral Agent shall be protected in making such payment or in taking such action in respect of any Obligations believed by Collateral Agent to be genuine;

(v) Collateral Agent may rely and shall be protected in acting upon any resolution, certificate, opinion, consent or other document reasonably believed by it to be genuine and to have been executed or presented by the proper party or parties;

(vi)whenever in the administration of its duties hereunder Collateral Agent deems it necessary for a factual matter to be proved or established prior to taking any action hereunder, Collateral Agent may request and the applicable Obligor shall, if requested and able, promptly provide certification regarding such matter;

(vii)   Collateral Agent may act through agents, attorneys or consultants and may rely on the advice and direction of such agents, attorneys or consultants duly appointed by Collateral Agent and shall not be responsible for the misconduct or gross negligence of any such agents, attorneys or consultants appointed with reasonable care hereunder;

(viii)   Collateral Agent shall not be liable for any error of judgment made in good faith unless a court of competent jurisdiction finally determines that Collateral Agent was grossly negligent in ascertaining the pertinent facts;

(ix)Collateral Agent shall not be liable with respect to any action it takes or omits to take in good faith in accordance with the written direction of the Requisite Lenders or the Lenders;

(x) money held in trust by Collateral Agent need not be segregated from other funds held by Collateral Agent except to the extent required by law;

(xi)Collateral Agent shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers, <u>provided</u> that

8

such action or omission by Collateral Agent does not constitute willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction; and

(xii)    Collateral Agent may consult with counsel of its selection, and the advice or opinion of counsel with respect to legal matters relating to this Agreement or the Collateral Documents shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of counsel; provided that such action or omission by Collateral Agent does not constitute willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction.

(b) Collateral Agent shall not be responsible for any recital in this Agreement or the Collateral Documents, or for insuring the Collateral, or for the validity or sufficiency of this Agreement or the Collateral Documents or of any supplements hereto or thereto or instruments of further assurance or for the sufficiency of the Collateral for the Obligations, or for the value of the Collateral or the title of any applicable Obligor to the Collateral or the maintenance of the Collateral or payment of taxes or other charges, or for the validity, correctness, perfection or priority of any Lien with respect to the Collateral.  Except as otherwise expressly provided herein, Collateral Agent shall not be bound to ascertain or inquire as to the performance or observance of any covenants, conditions or agreements on the part of any Obligor under this Agreement or the Collateral Documents, but Collateral Agent, at the written direction of the Requisite Lenders, may require full performance of any such covenants, conditions or agreements by Obligors (or any of them).

(c) In no event shall Collateral Agent be responsible or liable for special, indirect or consequential loss of or damage of any kind whatsoever irrespective of whether Collateral Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.  In addition, in no event shall Collateral Agent be personally liable for any taxes or any other governmental charges imposed upon or in respect of the Collateral or upon the income or other distributions thereon.

(d) Collateral Agent shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but Collateral Agent, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if Collateral Agent shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of any Obligor, personally or by agent or attorney at the sole cost of such Obligor, and shall incur no liability or additional liability of any kind by reason of such inquiry or investigation.

(e) Collateral Agent shall not have any duty to any Obligor or any Lender with respect to any Collateral, including any Collateral in its possession or control or in the possession or control of any agent or nominee of Collateral Agent selected by it with reasonable care, or any income therefrom or for the preservation of rights against prior parties or any other rights

9

pertaining to the Collateral, except as stated in this <u>Section 2.5(e)</u>.  Beyond the exercise of reasonable care in the custody thereof and the duty to account for monies actually received by it, Collateral Agent shall have no duty as to any Collateral in its possession or control or in the possession or control of any agent or bailee or any income thereon or as to preservation of rights against prior parties or any other rights pertaining thereto and Collateral Agent shall not be responsible for filing any financing or continuation statements or recording any documents or instruments in any public office at any time or times or otherwise perfecting or maintaining the perfection of any security interest in the Collateral.  Collateral Agent shall be deemed to have exercised reasonable care in the custody of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which it accords its own property and shall not be liable or responsible for any loss or diminution in the value of any of the Collateral, by reason of the act or omission of any carrier, forwarding agency or other agent or bailee selected by Collateral Agent with reasonable care.

(f)  In no event shall Collateral Agent be responsible or liable for any failure or delay in the performance of its obligations hereunder or under any Collateral Document arising out of or caused by, directly or indirectly, forces beyond its control, including, without limitation, strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software and hardware) services.

(g)  Collateral Agent hereby undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into this Agreement against Collateral Agent.

Section 2.6  <u>Collateral Agent's Compensation, Expenses, etc</u>.

(a)  Borrower agrees to pay Collateral Agent a fee of $50,000 pursuant to this Agreement. In addition, Borrower shall deposit with Collateral Agent the sum of $50,000 in a non-interest bearing account (the "*Expense Deposit Account*"). The Expense Deposit Account shall be held by the Collateral Agent in a segregated client account. The Collateral Agent will hold the Expense Deposit Account separate from its corporate funds and will not voluntarily make it available to its creditors in the event of bankruptcy. The Collateral Agent is not providing any investment supervision, recommendations or advice. The Collateral Agent shall have no responsibility or liability for any loss of principal of the Expense Deposit Account other than as a result of its gross negligence or willful misconduct. The Collateral Agent is not acting as a withholding agent or in any similar capacity in connection with the Expense Deposit Account, and has no tax reporting or income distribution obligations hereunder.  If at any time the Collateral Agent incurs expenses in excess of $5,000 individually or $10,000 in the aggregate (the "*Expenses*") in connection with its duties hereunder, the Collateral Agent shall give written notice to the Borrower describing the Expense in reasonable detail (the "*Expense Notice*") and requesting that the Collateral Agent be reimbursed for the Expenses from the Expense Deposit Account.  Within three (3) business days, the Borrower shall, by notice to Collateral Agent, either consent to or deny the reimbursement request, *provided, however*, that such consent shall not be unreasonably withheld. In the event that Borrower consents to the request, Collateral

10

Agent may withdraw an amount equal to the Expenses from the Expense Deposit Account for its own account.   In the event that the Borrower denies Collateral Agent's reimbursement request, the Borrower and Collateral Agent shall work together in good faith to determine the appropriate amount of Expenses entitled to reimbursement pursuant to the terms of this Section 2.6(b).   If Borrower has not responded to the Expense Notice within three (3) business days, Collateral Agent may deem Borrower to have consented to the reimbursement of the Expense.  In the event that amount in the Expense Deposit Account becomes less than $10,000, (i) Collateral Agent shall promptly provide notice to the Borrower and the Agent, (ii) the Borrower, the Collateral Agent and the Agent shall work together in good faith to promptly estimate an amount equal to expected aggregate Expenses for the remaining term of this Agreement, and (iii) the Borrower shall promptly pay (and in any event, within three (3) business days) deposit such amount into the Expense Deposit Account. In the event that Collateral Agent's aggregate Expenses exceed the amount remaining in the Expense Deposit Account, Collateral Agent shall not be required to expend any of its own funds in connection with its duties hereunder, and Lenders agree that Collateral Agent shall have no duty to do so or to take any action that may require Collateral Agent to expend its own funds.   Upon the termination of this Agreement in accordance with Section 4.2 below, the Collateral Agent shall promptly return the amount in the Expense Deposit Account to the Borrower. Upon the resignation or removal of the Collateral Agent, the Collateral Agent shall promptly pay the amount in the Expense Deposit Account to the successor Collateral Agent promptly upon its appointment pursuant to Section 2.7.

(b) OBLIGORS AND LENDERS HEREBY INDEMNIFY COLLATERAL AGENT AND AGREE TO DEFEND AND HOLD IT HARMLESS AGAINST ANY LOSS, EXPENSE, LIABILITY, CLAIM, DAMAGE, FEE, COST, JUDGMENT, FINE, AMOUNT IN SETTLEMENT OR OBLIGATION ARISING OUT OF OR IN CONNECTION WITH THE ACCEPTANCE, EXECUTION, DELIVERY AND ENFORCEMENT OF THIS AGREEMENT OR ANY COLLATERAL DOCUMENT AND THE PERFORMANCE OF ITS DUTIES HEREUNDER OR THEREUNDER, AS INCURRED INCLUDING THE COSTS AND EXPENSES OF DEFENDING ITSELF AGAINST ANY CLAIM OR LIABILITY IN CONNECTION WITH THE EXERCISE OR PERFORMANCE OF ANY OF ITS POWERS OR DUTIES HEREUNDER, AND THE PAYMENT, FAILURE TO PAY OR DELAY IN PAYMENT OF ANY STAMP OR OTHER TAXES (INCLUDING INTEREST AND PENALTIES) IN RESPECT OF THE OBLIGATIONS AND GRANTOR OBLIGATIONS, SUCH INDEMNITY AND COMPENSATION TO SURVIVE PAYMENT IN FULL ON THE OBLIGATIONS AND GRANTOR OBLIGATIONS AND ANY RESIGNATION, REMOVAL OR REPLACEMENT OF COLLATERAL AGENT OR TERMINATION OF THIS AGREEMENT; PROVIDED THAT SUCH INDEMNITY SHALL NOT APPLY TO ANY ACTIONS OR INACTION BY COLLATERAL AGENT THAT CONSTITUTE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, AS FINALLY DETERMINED BY A COURT OF COMPETENT JURISDICTION.   NOTWITHSTANDING THE FOREGOING, COLLATERAL AGENT SHALL FIRST SEEK SATISFACTION OF THE INDEMNITY SET FORTH IN THIS SECTION 2.6(B) FROM THE OBLIGORS, AND IF OBLIGORS ARE UNABLE TO SATISFY SUCH INDEMNITY IN FULL OR IN PART DUE TO THE OCCURRENCE OF AN EVENT DESCRIBED IN SECTIONS 6.1(D) AND (E) OF THE

11

NOTES, THEN COLLATERAL AGENT MAY SEEK SATISFACTION OF SUCH INDEMNITY OBLIGATION FROM THE LENDERS.

(c) When Collateral Agent incurs expenses or renders services in connection with any bankruptcy proceeding involving any Obligor or any Subsidiary thereof, the expenses (including the reasonable charges and expenses of its counsel) are intended to constitute expenses of administration under any applicable federal or state bankruptcy, insolvency or other similar law.

(d)      The provisions of this Section 2.6 shall survive the termination of this Agreement or the resignation, removal or replacement of Collateral Agent.

Section 2.7   Successor Collateral Agent.

(a) Collateral Agent or any successor Collateral Agent may resign at any time, effective upon ninety (90) days' prior written notice of resignation to each Lender (or such shorter period as may be agreed to by the Requisite Lenders and Collateral Agent). Collateral Agent may be removed by action taken by the Requisite Lenders in an instrument or instruments in writing delivered to Collateral Agent, effective upon thirty (30) days' notice.  In case the office of Collateral Agent shall become vacant for any reason, the Requisite Lenders shall appoint a successor Collateral Agent to fill such vacancy by an instrument or instruments in writing, and delivered to such successor Collateral Agent, the resigning or removed Collateral Agent and Lenders.   Until a new Collateral Agent shall be so appointed by the Requisite Lenders, Lenders shall use reasonable efforts to appoint an interim Collateral Agent to fill such vacancy by an instrument or instruments in writing executed by order of Lenders and delivered to such interim Collateral Agent, the resigning or removed Collateral Agent and Lenders.  Any interim Collateral Agent so appointed by Lenders shall immediately and without any further action be superseded by a successor Collateral Agent appointed by the Requisite Lenders in the manner provided in this Section 2.7(a).  If a successor or interim Collateral Agent does not take office within ninety (90) days after the resigning Collateral Agent's giving of notice of resignation or within thirty (30) days after the removed Collateral Agent's receiving notice of removal, the resigning or removed Collateral Agent or any Lender may, at the expense of Obligors, petition any court of competent jurisdiction for the appointment of a successor Collateral Agent.  Upon the appointment of any successor or interim Collateral Agent pursuant to this Section 2.7(a), such successor or interim Collateral Agent shall immediately and without any further action succeed to all the rights of obligations of the resigning or removed Collateral Agent hereunder and under the applicable Collateral Documents as if originally named herein and therein and the resigning or removed Collateral Agent, at the expense of Obligors, shall duly assign, transfer and deliver to such successor or interim Collateral Agent all the rights and moneys at the time held by the resigning or removed Collateral Agent under the applicable Collateral Documents and hereunder and shall execute and deliver such proper instruments as may be reasonably requested to evidence such assignment, transfer and delivery.

(b) Any entity into which Collateral Agent may be merged or with which it may be consolidated, or any entity resulting from any merger or consolidation to which Collateral

12

Agent is a party, or any state or national bank or trust company in any manner succeeding to all or substantially all of the corporate trust business of Collateral Agent, shall automatically succeed to all of the rights and obligations of Collateral Agent hereunder and under the applicable Collateral Documents without further action on the part of any of the parties hereto.

(c) Anything contained in this Agreement or the Collateral Documents to the contrary notwithstanding, the parties hereto hereby agree that if, due to the resignation of Collateral Agent in accordance with <u>Section 2.7(a)</u>, Collateral Agent fails to exercise any remedies against any Obligor at any of (i) the direction, or subject to the approval or consent, of the Requisite Lenders (if the Requisite Lenders are so empowered to act hereunder or under the terms of this Agreement or the Collateral Documents) or (ii) the direction, or subject to the approval or consent, of Lenders (if Lenders are so empowered to act hereunder or under the terms of this Agreement or the Collateral Documents), the Requisite Lenders (if so empowered to act) and Lenders (if so empowered to act) shall each be entitled to protect and enforce any rights of Collateral Agent arising out of this Agreement and the Collateral Documents and, in the case of actions so taken by the Requisite Lenders in accordance with the foregoing, it shall not be necessary for any other Lender to be joined as an additional party in any proceeding for such purpose.

## ARTICLE 3.  OBLIGATIONS OF OBLIGORS.

The obligations of Obligors under this Agreement, to the fullest extent permitted by applicable law, shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including:  (a) any renewal, extension, amendment or modification of, or addition or supplement to, or deletion from, this Agreement or the Collateral Documents, or any assignment or transfer of any of the foregoing, unless consented to in accordance with the terms of this Agreement or the Collateral Documents, as the case may be; (b) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such instrument or any exercise or non-exercise of any right, remedy, power or privilege under or in respect of any such instrument; (c) any furnishing of any additional security to Collateral Agent or any acceptance thereof or any release of any security by Collateral Agent; (d) any limitation on any party's liability or obligations under any such instrument or any invalidity or unenforceability, in whole or in part, of any such instrument or any term thereof; or (e) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to any Obligor or any action taken with respect to this Agreement by any trustee or receiver, or by any court, in any such proceeding; whether or not such Obligor shall have notice or knowledge of any of the foregoing.

Upon the occurrence or existence of any condition or event which constitutes a default or an Event of Default, each Obligor agrees to forthwith provide written notice to the Collateral Agent and each Lender, which notice shall expressly indicate the details of the specified condition or event giving rise to the default or an Event of Default and the steps the Obligors are taking to cure such default or Event of Default.

AUS:680397.8

Each Obligor shall cause each Person that becomes a subsidiary of such Obligor following the date hereof to execute and deliver to the Collateral Agent, forthwith upon such entity becoming a subsidiary of such Obligor, an Acknowledgement in the form attached hereto as Exhibit "A".

## ARTICLE 4.  MISCELLANEOUS.

Section 4.1  <u>Further Assurances</u>.  Each Lender agrees to do such further acts and things and to execute and deliver such additional agreements as necessary or as Collateral Agent may reasonably request to carry into effect the terms, provisions and purposes of this Agreement or to better confirm unto Collateral Agent or any Lender its respective rights, powers and remedies hereunder.  Each Obligor at its expense will execute, acknowledge and deliver all such agreements and instruments and take all such action as Collateral Agent, the Requisite Lenders (if so empowered to act hereunder) or Lenders (if so empowered to act hereunder), in a written instrument executed by Collateral Agent, the Requisite Lenders or Lenders (as the case may be) from time to time may reasonably request in order further to effectuate the purposes of this Agreement and to carry out the terms hereof.

Section 4.2  <u>Termination</u>.  Upon receipt by Collateral Agent of evidence reasonably satisfactory to it of the payment in full in cash of all other sums payable under this Agreement, the Notes and the other Collateral Documents (including the compensation, expenses and disbursements of Collateral Agent and Lenders), this Agreement shall terminate and Collateral Agent, at the request and expense of Borrower, will execute and deliver to Borrower a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.  Notwithstanding the satisfaction and termination of this Agreement or the other Collateral Documents, the obligations of Obligors and Lenders to Collateral Agent under <u>Section 2.6</u> of this Agreement shall survive.

Section 4.3  <u>Notices, etc</u>.  Except in the case of notices and other communications expressly permitted to be given by telephone, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by facsimile, as follows:

(a)  if to any Obligor, to it at:

CoinTerra, Inc.
11130 Jollyville Rd, Suite 100
Austin, Texas  78759
Attn.:  Chief Executive Officer
Email:  ravi@cointerra.com

with a copy (which shall not constitute notice) to:

14

Andrews Kurth LLP
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Facsimile: (512) 542-5227
Attn: Carmelo Gordian

(b) if to a Lender, to it at the address or facsimile number set forth on <u>Schedule I</u>.

(c) if to Collateral Agent, to it at:

Fortis Advisors LLC
Attn: Rick Fink
4225 Executive Square, Suite 1040
La Jolla, California 92037
Email: rfink@fortisrep.com
Facsimile: (858) 408-1843

(d) if to Agent, to it at:

Industrial Alliance Securities Inc.
26 Wellington St. East, Suite 900
Toronto, Ontario M5E 1S2
Attn: John McMahon
Email: JMcMahon@IAGTO.CA


Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto. All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt except that any notice given hereunder by facsimile shall be deemed to have been given on the date recorded on the confirmation of transmission of such facsimile.

Section 4.4 <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of and be enforceable by the respective successors and permitted assigns of the parties hereto. No party may assign any of its rights under this Agreement except in connection with such party's assignment of its Note(s) and any such assignment shall require advance written notice to the Collateral Agent (except where such assignment is being made to a Person that is an Affiliate of an undersigned Lender, in which case, no written consent of Collateral Agent shall be required). Subject to the restrictions set forth in the preceding sentence, any person or entity that becomes a Lender after the date hereof shall automatically be bound by the terms hereof and, in order to be entitled to the benefits of any of the Collateral, shall, if requested by Collateral Agent, execute and deliver a joinder or addendum to this Agreement to evidence same.

15

Section 4.5    Governing Law.    THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH, AND THE RIGHTS OF THE PARTIES SHALL BE GOVERNED BY, THE INTERNAL LAW OF THE STATE OF TEXAS, EXCLUDING CHOICE-OF-LAW PRINCIPLES OF THE LAW OF SUCH STATE THAT WOULD PERMIT THE APPLICATION OF THE LAWS OF A JURISDICTION OTHER THAN SUCH STATE.

Section 4.6    Jurisdiction; Jury Trial.

(a) Each party hereto hereby irrevocably and unconditionally (i) submits, for itself and its property, to the jurisdiction of any court located in Austin, Texas.  Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Nothing in this Agreement shall affect any right that Collateral Agent or Lenders may otherwise have to bring any action or proceeding relating to this Agreement or the Collateral Documents against any Obligor or its properties in the courts of any jurisdiction.

(b)    Each party hereto irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the Collateral Documents in any court referred to in paragraph (a) of this Section and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c) Each Obligor irrevocably consents to service of process in the manner provided for notices in Section 4.3.  Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by law.

(d) EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE COLLATERAL DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).    EACH PARTY HERETO (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

Section 4.7    Execution in Counterparts; Severability.    This Agreement may be executed in several counterparts, each of which shall be an original, but all of which shall constitute one instrument.  If any term of this Agreement or any application thereof shall

16

be held to be invalid, illegal or unenforceable, the validity of other terms of this Agreement or any other application of such term shall in no way be affected thereby.

Section 4.8 <u>No Implied Beneficiaries</u>. Nothing in this Agreement (except <u>Sections 4.9 and 4.12</u> below), expressed or implied, is intended or shall be construed to confer upon or give to any Person, other than Lenders and Collateral Agent, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation herein contained.

Section 4.9 <u>Amendments</u>. No provision of this Agreement may be amended or waived except in a writing signed by the Requisite Lenders and Collateral Agent; provided, however, that any amendment of this Agreement expanding the obligations or liabilities of any Obligor hereunder shall require such Obligor's consent. In addition, notwithstanding anything to the contrary in any Collateral Document, Lenders hereby agree that no provision of any Collateral Document may be amended or waived except in writing signed by the Collateral Agent at the written request of the Requisite Lenders, except that the consent of all the Lenders shall be required to do any of the following: (i) modify or eliminate any financial term of the Notes or any fees or other amounts payable under this Agreement or any Collateral Document (except in connection with the waiver of the requirement for the default rate of interest provide for under the Notes, which waiver shall be effective for all the Notes with the written consent of the Requisite Lenders); (ii) modify or eliminate any provisions that provides for the ratable sharing of payments or any proceeds realized from the Collateral (or any part thereof); (iii) release Collateral Agent's Lien in and to the Collateral (or any part thereof); <u>provided</u> that nothing herein shall prohibit Collateral Agent from releasing any Collateral, or require consent of the Lenders for such release, in respect of items sold, leased, transferred or otherwise disposed of to the extent such transaction is expressly permitted under any Collateral Document or upon payment in full of all Obligations; (iv) contractually subordinate any of Collateral Agent's Liens in and to the Collateral (or any part thereof); or (v) release Borrower or any Guarantor from any obligation for the payment of money or consent to the assignment or transfer by Borrower or any Guarantor of any of its obligations or duties under this Agreement or any Collateral Document (except in connection with a merger, liquidation, dissolution or sale of Guarantor expressly permitted by the terms of any Collateral Document). No provision of any Collateral Document may be amended or modified to affect the rights or duties of Collateral Agent without the prior written consent of Collateral Agent.

Section 4.10 <u>Non-Reliance on Collateral Agent and other Lenders</u>. Each Lender acknowledges that it has, independently and without reliance upon Collateral Agent or any Lender or any of their respective officers, directors, employees, representatives, attorneys, accountants, consultants or other professionals, agents or experts at any time retained by thereby or any Affiliate of such Persons and based on such documents and information as it has deemed appropriate, made its own credit analysis and decisions to enter into this Agreement and the Collateral Documents and will continue to make its own decisions in taking or not taking action under or based upon this Agreement, any

17

Collateral Document or any related agreement or any document furnished hereunder or thereunder.

Section 4.11 <u>Limitations Relative to Other Agreements</u>.  Nothing contained in this Agreement is intended to impair as between the holders of the Notes, on the one hand, and Obligors, on the other hand, the rights of the holders of the Notes and the obligations of Obligors under the Notes and the other Collateral Documents.

Section 4.12 <u>Amendment Holdback Amount</u>.  Industrial Alliance Securities Inc. (the "**Agent**") is hereby directed and authorized by the Borrower to, upon the date hereof, deliver to Collateral Agent in immediately available funds a portion of the aggregate principal amount paid by the Lenders to purchase the Notes pursuant to the Purchase Agreement equal to $250,000 (the "***Amendment Holdback Amount***").  Upon receipt by the Collateral Agent from the Borrower of evidence of an amendment to (i) that certain UCC Financing Statement, filed on March 7, 2014 with the Delaware Department of State, initial filing # 2014 0899773, and (ii) the security agreement, dated March 3, 2014, by and between Borrower and Future Electronics Corp, in each case providing for the limitation of the collateral definition set forth therein to "purchase money collateral" (as defined in the UCC) (the "***Amendment Evidence***"), Collateral Agent shall promptly (and in any event, not later than the fifth (5th) business day following the receipt of the Amendment Evidence) pay to Borrower the Amendment Holdback Amount.   If the Collateral Agent has not received the Amendment Evidence from Borrower on or before October 31, 2014, the Collateral Agent shall promptly (an in any event not later than November 7, 2014) pay the Amendment Holdback Amount to the Agent, who shall then ratably distribute the Amendment Holdback Amount to the Lenders.  In the event that the Collateral Agent resigns or is removed prior to paying the Amendment Holdback Amount in accordance with this <u>Section 4.12</u>, the Collateral Agent shall pay the Amendment Holdback Amount to the successor Collateral Agent promptly (and in any event, within three (3) business days) upon its appointment pursuant to <u>Section 2.7</u>.  The Agent is a third party beneficiary to this <u>Section 4.12</u>.

[Signature pages to follow.]

18

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above.

**COLLATERAL AGENT:**

**Fortis Advisors LLC**

By: _____

Name: _Ryan Simkin_____

Title: _Managing Director_____

**IN WITNESS WHEREOF,** each of the undersigned has caused this Agreement to be executed by its duly authorized officer as of the date first written above.

**BORROWER:**

**CoinTerra, Inc., a Delaware Corporation**

By _____

Name: RAVI IYENGAR

Title: CHIEF EXECUTIVE OFFICER

**GUARANTORS:**

**Terramine Hosting Inc., a Nevada Corporation**

By _____

Name: RAVI IYENGAR

Title: PRESIDENT & SECRETARY

**Cohinoor, Inc., a Montana Corporation**

By _____

Name: RAVI IYENGAR

Title: PRESIDENT & SECRETARY

**Zuriya LLC, a Delaware limited liability company**

By _____

Name: RAVI IYENGAR

Title: PRESIDENT & SECRETARY

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner

By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _____
Name: _____
Title: _____
J.A. Developments.

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

### LENDERS

[_____]

By: [_____]
  its General Partner

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

## LENDERS

[_____]

By: [_____]
  its General Partner


By: _____
Name: Trent Thiessen
Title: President

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
 its General Partner

By: _____
Name: _Rodney Koch_____
Title: _____

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

**PALODURO INVESTMENTS INC.**
By: [_____]
its General Partner


By: _____
Name:  ROBERT CROSS
Title:  PRESIDENT

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _M Glickman_____
Name:  MEL GLICKMAN ARCHITECT
Title:  PRESIDENT

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
 its General Partner


By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: Marquest Asset Management ITF Marquest Funds
Name: Gerry Brockelsby
Title: Portfolio Manager

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
   its General Partner


By: _____
Name: _Kevin Thompson_____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**<u>LENDERS</u>**

[_____]

By: [_____]
its General Partner


By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

### LENDERS

[_____]

By: [_____]
its General Partner


By: _J. Nadlmer_
Name: _HELEN DITTMER_
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
  its General Partner

By: _____
Name: _____ BRAD WHITE ____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _M.C.Glickman_____
Name: _MEL GLICKMAN ARCHITECT_
Title: _PRESIDENT_____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _Gisela Waibel_____
Name: _Gisela Waibel._____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _____
Name: _____
Title: _____

*E. Jane Day*

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
   its General Partner


By: _Dorothy Platzer_____
Name: _Dorothy Platzer_____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

## **LENDERS**

[_____]

By: [_____]
its General Partner


By: _____
Name: DEREK ANDERSON
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner


By: _____

Name: _____

Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

DocuSign Envelope ID: A331D00B-2197-46F8-9533-2D698C40DB4C

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[Certifiable Solutions, LLC

By: [_____]
its General Partner

By: [ _Bart R McDonough_ ]_____
Name: Bart R McDonough
Title: _CEO_

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
  its General Partner


By: _Brian Gibbs_
Name: _Bran Gibbs_
Title: _____

610-PC5085.8521

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _____
Name: _2026260 ONTARIO INC_
Title: _ADAM KELESKY_
_SECRETARY, DIRECTOR_

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: X _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner


By: _____
Name: _____ Mark Wayne _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
     its General Partner

By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
     its General Partner


By: _Michael Rauchman_
Name: _MICHAEL RAUCHMAN_
Title: _manager, HEDGEHOG ADVISORS, LLC_

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner

By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

### LENDERS

[_____]

By: [_____]
 its General Partner

By: X _____
Name: _____ Lorne Waldman
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
  its General Partner


By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

## LENDERS

[_____]

By: [_____]
its General Partner

*E. Janie Day*

By: 
Name: *E. Jane Day*
Title: _____

**SIGN HERE**

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above.

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner

By: _____
Name: _____ 682501 ALBERTA LTD.
Title: _____ PRESIDENT JEFF GREEN

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner

By: _____
Name: Peter Avery
Title: President
        J.A. Developments .

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

**LENDERS**

[_____]

By: [_____]
its General Partner

By: _Thomas Kurtz,_____
Name: _Thomas Kritsch._____
Title: _____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the date first written above .

<u>**LENDERS**</u>

[_____]

By: [_____]
its General Partner


By: _____
Name: _____Dana Gilman_____
Title: ____Investment advisor_____

SIGNATURE PAGE TO COLLATERAL AGENT AGREEMENT

**SCHEDULE I**

**LENDERS AND NOTES**

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| 101049658 SK Ltd.<br>518 Queen St<br>Saskatoon SK S7K 0M5 | 25,000.00 | NBCN Inc.  ITF **101049658 SK Ltd., Acct 4EH378A**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #904 |
| Dr. James McHattie Medical Prof. Corp<br>1821 Rose St<br>Regina SK S4P 1Z7 | 25,000.00 | NBCN Inc.  ITF **Dr. James McHattie Medical Prof Corp,  Acct 4EH122A**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #904 |
| Rodney Koch<br>PO BOX 151<br>Edenwold SK S0G 1K0 | 40,000.00 | NBCN Inc.  ITF **Rodney Koch,  Acct 4EH110E**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #905 |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| T.Thiessen M.D.Surgical Prof Corp<br>247 Lakeshore Pl<br>Saskatoon SK S7J 3T7 | 54,000.00 | NBCN Inc.  ITF **T. Thiessen M.D. Surgical Prof Corp,  Acct 4EH623E**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #906 |
| Dorothy Platzer<br>401 Dalhousie Cres<br>Saskatoon SK S7H 3S3 | 40,000.00 | NBCN Inc.  ITF **Dorothy Platzer, Acct 4EH104B**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #906 |
| Brian Gibbs<br>PO Box 29004<br>111-1715 Preston Ave N<br>Saskatoon SK S7N 4V2 | 50,000.00 | NBCN Inc.  ITF **Brian Gibbs,  Acct 4EH035E**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #904 |
| Kevin Thompson<br>414 Victor Place<br>Saskatoon SK S7T 0E2 | 10,000.00 | NBCN Inc.  ITF **Kevin Thompson, Acct 4EE498A**<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2 | NBCN Inc.<br>1010 De la Gauchetiere West<br>Mezzanine 100<br>Montreal, QC H3B 5J2<br>Attn: Securities Department #904 |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Philip Armstrong PH 77 Avenue Rd Toronto On M5R 3R8 | 100,000.00 | NBCN Inc.  ITF Philip Armstrong **Acct 4EDO89F** 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Mel Glickman Architect, 378A Beresford ave , Toronto On M6S 3B5 | 100,000.00 | NBCN Inc.  ITF Mel Glickman Architect **Acct 4ELJ28F** 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Mark Wayne, 155 Waterloo Dr SW, Calgary AB T3C 3G4 | 250,000.00 | NBCN Inc.  ITF Mark Wayne  **Acct 4EE211F** 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 De la Gauchetiere West Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Felcom Capital Corp 26 Wellington Street East Suite 910 Toronto ON M5E 1S2 | 25,000.00 | NBCN Inc.  ITF Felcom Capital Corp, Acct 4ea937f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Anita Berkis 26 Wellington Street East Suite 910 Toronto ON M5E 1S2 | 25,000.00 | NBCN Inc.  ITF Anita Berkis, Acct 4ea938f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Donald S McFarlane 26 Wellington Street East Suite 900 Toronto ON M5E 1S2 | 100,000.00 | NBCN Inc.  ITF Donald S McFarlane, Acct 4ee586f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| James Ward Timothy Witzel 932 Victoria Street North Kitchener ON N2B 1W4 | 50,000.00 | NBCN Inc.  ITF James Ward Timothy Witzel, Acct 4ea875f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Maxillo-Care Inc 2891 Ridge Road West RR # 2 RPO Shanty Bay ON L0L 2L0 | 25,000.00 | NBCN Inc.  ITF Maxillo-Care Inc, Acct 4ea656f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| David Gargaro 9 Hyland Ave Etobicoke ON M8X 1P8 | 25,000.00 | NBCN Inc.  ITF David Gargaro, Acct 4ea764e 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Ward Seymour, 81 Stainway Blvd, Etobicoke On M9W 6H6 | 50,000.00 | NBCN Inc.  ITF Ward Seymour, Acct 4ea054f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
| --- | --- | --- | --- |
| Thomas J Rice, 342 Country Club Blvd. Winnipeg MB R3K 1X6 | 50,000.00 | NBCN Inc.  ITF Thomas J Rice, Acct 4eb620f1010 Rue De la Gauchetiere OuestMezzanine 100Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere OuestMezzanine 100Montreal, QC H3B 5J2Attn: Securities Department #904 |
| J David Bunston,46 Bernard Ave, Toronto On M5R 1R2 | 25,000.00 | NBCN Inc.  ITF J David Bunston, Acct 4ea200e 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Joseph Conway, 49 Nanton Ave, Toronto On M4W 2Y8 | 100,000.00 | NBCN Inc.  ITF Joseph Conway, Acct 4ea247f 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department #904 |
| Purling Holdings, 9 Wakefield Cres Scarborough ON M1W 2C1 | 60,000 | NBCN Inc.  ITF Purling HoldingsAcct.#4EB713F 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |
| JA Developments. 14689 Bathurst St. Aurora On L4G 7A4 | 35,000 | NBCN Inc.  ITF JA Developments Acct.#4eb720F   1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Lorne Waldman, 281 Eglinton Ave E. Toronto ON M4P 1L3 | 35,000 | NBCN Inc.  ITF Lorne Waldman Acct.#4eb766F  1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |
| Jane Day, 36 Rosedale Rd, Toronto On M4W 2P6 | 60,000 | NBCN Inc.  ITF Jane Day Acct.#4eda04e  1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |
| Steedco, 796217 Grey Rd Blue Mountains On L9Y 0R1 | 25,000 | NBCN Inc.  ITF  Steedco Acct.#4EB743B      1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |
| Peter Avery, 146 bathurst St. Aurora On L4G 7A4 | 35,000 | NBCN Inc.  ITF Peter Avery Acct.#4edn50F   1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |
| Robert Hannah, 26 Wellington St E Suite 900 Toronto On M5E 1S2 | 26,000 | NBCN Inc. ITF Robert Hannah Acct: 4EE078F 1010 de la Gauchetiere West Mezzanine 100 Montreal QC, H3B 5J2 | NBCN Inc. 1010 Rue De la Gauchetiere Ouest Mezzanine 100 Montreal, QC H3B 5J2 Attn: Securities Department |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Marquest -501 | 210,000.00 | RBC Investors Services Trust in Trust for a/c#011800030 | RBC Investor Sevices Trust,155 Wellington St. 2nd Floor, Toronto ON M5J 2S1 Att: Cage Rebecca 416-955-3191 |
| Marquest -571 | 115,000.00 | RBC Investors Services Trust in Trust for a/c#162142001 | RBC Investor Sevices Trust,155 Wellington St. 2nd Floor, Toronto ON M5J 2S1  Att: Cage Rebecca 416-955-3191 |
| Michael Shannon,2860 Hill Park Rd Montreal QC H3H 1T1 | 200,000.00 | Laurentian Bank Securities Inc. 1981, ave McGill College, Suite 1900 Montreal (Quebec) H3A 3K3 | Laurentain Bank Securities Inc. Attn: Louise Belanger 514-350-2826 belangerL@vmbl.ca, 1981 Ave McGill College Bureau 1900 Montreal Qc H3A 3K3 |
| Jason Mann | 145,000.00 | Mackie Research Capital Corp. ITF Jason Mann, 199 Bay Street, Suite 4500 Commerce Court West Box 368 Toronto On M5L 1G2 | Mackie Research Capital Corp. ITF Jason Mann, 199 Bay Street, Suite 4500 Commerce Court West Box 368 Toronto On M5L 1G2 |
| Brad White, 3 May St, Toronto On M4W 2X9 | 250,000.00 | GMP Securities LP ITF 400-NHR0-F, 145 King St. W Suite 300 Toronto On M5H 1J8 | GMP Securities LP, ITF A/C #400-NHR0-F    2nd Fl-Cage, 145 King Street West, Suite 300 Toronto On M5H 1J8 |
| 2026860 Ontario Inc. 606-77 Avenue Rd, Toronto On M5R 3R8 | 100,000.00 | GMP Securities LP ITF 610-PC90-B, 145 King St. W Suite 300, Toronto On M5H 1J8 | GMP Securities LP,ITF A/C #610-PC90-B 2nd Fl-Cage, 145 King Street West, Suite 300 Toronto On M5H 1J8 |
| Helen Dittmer, 78 Sunset Way SE Calgary AB T2X 3C1 | 50,000.00 | GMP Securities L.P. ITF A/C 610-AWS0-F , 145 King St. W Suite 300, Toronto On M5H 1J8 | |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Darren Dittmer or Ellen Shong Leong 308 Hidden Ranch Circle NW Calgary AB T3A 5R2 | 25,000.00 | GMP Securities L.P. ITF A/C 610-ZTN0-B , 145 King St. W Suite 300, Toronto On M5H 1J8 | |
| Gisela Wsaibel, 1385 Crestwell Rd West Vancouver BC V7V 3N6 | 100,000.00 | GMP Securities L.P. ITF A/C 610-B0R0-F  145 King St. W Suite 300, Toronto On M5H 1J8 | |
| Paloduro Investments | 500,000.00 | Paloduro Investments Inc. 1560 - 505 Burrard St. Vancouver BC V7X 1M5 | |
| Clarence LP | 500,000.00 | Clarence LP c/o Wicklow Capital, Inc.53 W. Jackson Blvd. Suite 1204, Chicago IL 60604 | |
| Serenity Investments LLC | 250,000.00 | Serenity Investments LLC 830 North Boulevard Oak Park, IL 60301 | |
| David G P Allan | 50,000.00 | David G P Allan 90 Winchester St T oronto, ON Canada M4X 1B2 | |
| Michael Rauchman | 75,000.00 | Hedgehog Advisors, LLC 1584 Dawn Ct,  Long Grover, IL 60047 | |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Derek Anderson | 35,000.00 | Derek Anderson<br>6179 Iris Way<br>Arvada, CO 80004 | |
| Bart R McDonough | 100,000.00 | Certifiable Solutions, LLC<br>201 David L Boren Blvd, Suite 250<br>Norman, OK 73072 | |
| Jane Day, 36 Rosedale Rd Toronto On M4W 2P6 | 40,000.00 | NBCN Inc.  ITF Jane Day  a/c #4eda04f 1010 Rue De la Gauchetiere Ouest<br><br>Mezzanine 100<br><br>Montreal, QC H3B 5J2 | NBCN Inc.<br><br>250 Yonge Street<br><br>Suite 1900<br><br>Toronto ON M5B 2L7<br><br>Attention: Eria Lau<br><br>(416) 869-6527 |
| JA Developments, 17 Autumn Way, Aurora On L4G 4P2 | 40,000.00 | NBCN Inc.  ITF 4eb720F  a/c # 1010 Rue De la Gauchetiere Ouest<br><br>Mezzanine 100<br><br>Montreal, QC H3B 5J2 | NBCN Inc.<br><br>250 Yonge Street<br><br>Suite 1900<br><br>Toronto ON M5B 2L7<br><br>Attention: Eria Lau<br><br>(416) 869-6527 |

| Name and Address of Purchaser | Principal | Registration | Delivery Instructions |
|---|---|---|---|
| Tom Kritsch, 504-10 Bay St E Thornbury On N0H 2P0 | 50,000.00 | NBCN Inc.  ITF 4eb962F a/c # 1010 Rue De la Gauchetiere Ouest<br><br>Mezzanine 100<br><br>Montreal, QC H3B 5J2 | NBCN Inc.<br><br>250 Yonge Street<br><br>Suite 1900<br><br>Toronto ON M5B 2L7<br><br>Attention: Eria Lau<br><br>(416) 869-6527 |
| 682501Alberta Ltd. 26 Wellington st E Suite 920 Toronto ON M5E 1S2 | 50,000.00 | NBCN Inc. ITF    a/c # 4ec880F 1010 Rue De la Gauchetiere Ouest<br><br>Mezzanine 100<br><br>Montreal, QC H3B 5J2 | NBCN Inc.<br><br>250 Yonge Street<br><br>Suite 1900<br><br>Toronto ON M5B 2L7<br><br>Attention: Eria Lau<br><br>(416) 869-6527 |
| Dana Gilman | 100,000.00 | Fidelity Clearing Canada ULC ITF A/C D12-DGC0-E, 200-483 Bay St, South Tower, Toronto, ON, M5G 2N7 | Fidelity Clearing Canada ULC<br><br>200-483 Bay St, South Tower<br><br>Toronto ON M5G 2N7<br>Attn: Dwayne McKenzie |
|  | 4,430,000.00 |  |  |

### EXHIBIT "A" – FORM OF

### ACKNOWLEDGMENT OF AND CONSENT AND AGREEMENT TO

### COLLATERAL AGENT AGREEMENT

For good and valuable consideration (the sufficiency and receipt of which are hereby acknowledged), the undersigned:

(a)    acknowledges and consents and agrees to the terms and conditions of the collateral agent agreement attached hereto as Schedule "A" (the "**Collateral Agent Agreement**") and specifically:

(i)    consents and agrees to be bound by and to perform all of the obligations and agreements of each Obligor set forth in the Collateral Agent Agreement as if it were an original signatory thereto as an "Obligor"; and

(ii)    acknowledges and agrees that it is not a third-party beneficiary of, and has no rights under, the Collateral Agent Agreement; and

(b)    acknowledges and agrees that additional Obligors may become parties to the Collateral Agent Agreement from time to time by executing a counterpart hereof and delivering the same to Collateral Agent.

**THIS ACKNOWLEDGMENT OF AND CONSENT AND AGREEMENT TO COLLATERAL AGENT AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAW OF THE STATE OF TEXAS EXCLUDING CHOICE-OF-LAW PRINCIPLES OF THE LAW OF SUCH STATE THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF A JURISDICTION OTHER THAN SUCH STATE.**

**IN WITNESS WHEREOF,** the undersigned has caused this acknowledgment of and consent and agreement to Collateral Agent Agreement to be executed by its duly authorized officer as the ____ day of _____, _____.

**[●]**

By_____

Name:

Title:

**Schedule "A"**

**Collateral Agent Agreement**

See attached.