## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| COINTERRA, INC. | § | Case No. 15-10109-hcm |
|     Debtor | § | (Chapter 7) |
| | § | |

_____

| | | |
|---|---|---|
| FUTURE ELECTRONICS CORP. | § | |
|     Plaintiff | § | |
| | § | |
| vs. | § | Adversary No. _____ |
| | § | |
| FORTIS ADVISORS, LLC, | § | |
| APPLIED CIRCUIT TECHNOLOGY, | § | |
| INC.  d/b/a AUTOMATED CIRCUIT | § | |
| DESIGN and RANDOLPH OSHEROW, | § | |
| CHAPTER 7 TRUSTEE for | § | |
| COINTERRA, INC., | § | |
|     Defendants | § | |

### COMPLAINT TO DETERMINE EXTENT, VALIDITY OR PRIORITY OF LIENS OR OTHER INTERESTS IN  PROPERTY OF THE CHAPTER 7 ESTSATE OF COINTERRA, INC. AND REQUEST FOR INJUNCTIVE RELIEF

TO THE HONORABLE CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Future Electronics Corp. ("Plaintiff"), files this Complaint to Determine Extent, Validity or Priority of Liens or Other Interests in Property of the Chapter 7 Estate of Cointerra, Inc. and Request for Injunctive Relief ("Complaint").  In support thereof, Plaintiff respectfully states as follows:

### I.  JURISDICTION AND VENUE

1.   This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(1), 157(b)(2)(A), (B), (K) and (O).

2.   Venue is proper pursuant to 28 U.S.C. § 1409 in that this adversary proceeding arises in and is related to the above-referenced bankruptcy case (the "Bankruptcy Case") under title 11

of the United States Code (the "Bankruptcy Code"), which case is currently pending before the Bankruptcy Court.

3.    This adversary proceeding is brought pursuant to 11 U.S.C. §§ 105, 502 and 506, FED. R. BANKR. P. 7001(2), FED. R. BANKR. P. 7001(7) and 28 U.S.C. §§ 2201, 2202.

4.    The Court has authority to enter a final judgment in this matter for the reason that this proceeding relates to lien claims against property of the estate and seeks equitable relief.

## II. **PARTIES**

5.    Plaintiff, Future Electronics Corp., is a Massachusetts corporation and a secured creditor in the Bankruptcy Case.  Plaintiff is the first lienholder of certain of the personal property in issue.

6.    Defendant, Fortis Advisors, LLC  ("Fortis"), a California limited liability company, acts as the Collateral Agent for Lenders as defined in various documents and represents the interests of  various lenders and is being joined under F.R.B.P. 7019 or 7020 and a summons will be served to Rick Fink, Fortis Advisors as Collateral Agent, 12526 High Bluff Drive, Suite 280, San Diego, CA 92130.   A courtesy copy will be sent to Fortis' counsel of record,  E. P. Keiffer, Wright Ginsberg Brusilow, PC, 325 N. St. Paul Street, Suite 4150, Dallas, Texas 75201.

7.    Defendant, Applied Circuit Technology, Inc. d/b/a Automated Circuit Design (hereinafter "ACD"), is a Texas corporation and an unsecured creditor in the Bankruptcy Case and may be served with process at 1250 American Pkwy., Richardson, TX 75081.   A courtesy copy will be sent to ACD's counsel of record,  Patrick Frank, Fiedler Akin Frank and Carlton, PC,  10000 North Central Expressway, Suite 1016, Dallas, Texas  75231.

8.    Defendant, Randolph Osherow  (hereinafter the "Chapter 7 Trustee"), is the duly appointed trustee in this Chapter 7 Bankruptcy Case and may be served with process at 342 W.

Woodlawn, Suite 100, San Antonio, TX 78212. A courtesy copy will be sent to the Trustee's proposed counsel, Steve Turner, Barrett Daffin Frappier Turner & Engel, 610 West 5thStreet, Suite 602, Austin, Texas 78701.

### III. <u>BACKGROUND</u>

9. On January 24, 2015 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

10. On February 9, 2015, Debtor filed its Schedules and Statement of Financial Affairs ("Schedules") [Dkt. No. 15]. Debtor listed personal property assets in the amount of $14,096,255.44 with total liabilities in the amount of $15,514,776.70 [Dkt. No 15, Pg. 1]. A portion of Debtor's personal property assets include "Raw Materials at ACD" valued at $6,526,841.27 and "57 TerraMiners at ACD" (computer servers) valued at $26,505.00 [Dkt. No. 15, Pg. 11].

11. Debtor listed secured creditor liabilities in the amount of $6,494,744.85, one priority liability in the amount of $1,340.78 and unsecured liabilities totaling $9,018,691.07 [Dkt. No. 15, Pg. 1]. Of that amount, Plaintiff is listed as a secured creditor in the amount of $1,961,580.40 [Dkt. No. 15, Pg. 16] and Fortis is a conglomerate of 48 individual secured creditors totaling $4,430,000. As such, of the $6,494,744.85 in secured liability listed by Debtor, the secured debts of Plaintiff and Fortis amount to $6,391,580.10. ACD is listed as an unsecured creditor in the amount of $308,259.76 [Dkt. No. 15, Pg. 25].

12. The Chapter 7 Trustee filed a Request for Notice of Assets on February 24, 2015 [Dkt. No. 22] and an Order Setting Proof of Claims Bar Date was entered on February 27, 2015 [Dkt. No. 24]. The bar date for filing proofs of claims is May 27, 2015. Plaintiff has filed a secured proof of claim in the amount of $1,961,580.40 plus interest and fees [Claim No. 8].

Fortis has filed a secured proof of claim in the amount of $4,560,154.66 plus interest and fees [Claim No. 44]. ACD has not yet filed a proof of claim.

13.  An initial meeting of creditors was held on February 27, 2015. The meeting was adjourned and will be continued on March 27, 2015.

14.  On February 3, 2014, Plaintiff filed a motion to lift stay as to a portion of Plaintiff's collateral purchased by Debtor and in the possession of ACD [Dkt. No. 7]. An amended motion to lift stay was filed by Plaintiff on February 5, 2015 ("Motion") [Dkt. No. 9]. Prior to filing the motion to lift stay, a representative of Plaintiff spoke with ACD, another customer of Plaintiff's, and confirmed that ACD was in possession of the collateral which was the subject of the motion. ACD stated that it would put Plaintiff's collateral aside and do nothing until it received a copy of the order lifting stay. ACD was served with both the original motion to lift stay and the amended Motion. ACD did not file a response to the Motion.

15.  Plaintiff was not aware of the liens held by Fortis until Fortis filed a limited response to the Motion to note its junior (second) lien as to the collateral addressed in the Motion [Dkt. No. 21]. The Order lifting the stay as to a portion of Plaintiff's collateral in the possession of ACD ("Order") was drafted with input from Fortis' counsel and was entered by the Court on March 6, 2015 [Dkt. No. 27]. No other party has been granted any stay relief in the Bankruptcy Case as of the filing of this Complaint, though stay relief is currently being sought by Fortis.

16.  Plaintiff forwarded the Order to ACD and contacted ACD to coordinate the retrieval of its collateral. ACD refused to allow Plaintiff to retrieve its collateral because ACD contends that it may have a lien of some sort as to collateral on which Plaintiff secured stay relief. Plaintiff is unaware of any documentation between Cointerra, Inc, and ACD granting ACD any contractual lien, nor has ACD filed a UCC-1 in Delaware, the state of Debtor's incorporation.

As of the filing of this Complaint, Plaintiff has not received any response from ACD or its counsel regarding the nature or existence of any lien which ACD might be asserting or any basis for preventing Plaintiff from collecting the applicable collateral for disposition consistent with this Court's Order despite repeated requests for same.  Fortis has provided Plaintiff and the Chapter 7 Trustee evidence of its lien.

17.     Plaintiff claims a purchase money security interest in discrete portions of 57 TerraMiners in the possession of ACD, as accessions.  The automatic stay has NOT been lifted as to any party as to the 57 TerraMiners.  These TerraMiners are valued at $26,505.00 by Debtor [Dkt. No. 15, Pg. 11].   Fortis has filed a motion to lift stay as to all of the property on which it asserts a security interest, including those portions of the 57 TerraMiners that Plaintiff does not have a lien upon, that are in the possession of ACD and on other property of the Chapter 7 estate in the possession of ACD that is distinct from and not a part of the collateral on which the stay was lifted as to Plaintiff [Dkt. No. 28].

18.     Proof of the validity, priority or extent of the liens, claims, encumbrances, or interests in the Debtor's property claimed by Plaintiff, ACD and Fortis is necessary to ensure that any distributions in the Bankruptcy Case are accurate.  If, in fact, Plaintiff and Fortis are not fully secured creditors then that will greatly impact any distribution to unsecured creditors made by the Chapter 7 Trustee.  Furthermore, proof of the validity, priority or extent of liens, claims, encumbrances or interests in the property is necessary to ensure that marketable, or acceptable, title can be conveyed to any future purchaser of the property.

### IV.  DETERMINATION OF VALIDITY, EXTENT OR PRIORITY OF LIENS

19.    Plaintiff re-adopts and re-alleges the allegations stated above as though fully set forth herein.

20.    Pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, Plaintiff requests that the Bankruptcy Court determine the validity, extent or priority of the liens asserted in Debtor's property in the possession of ACD.

21.  Plaintiff contends that it holds a first lien upon such property by virtue of a  purchase money Security Agreement with Debtor in consideration for the extension of credit for collateral purchased by Debtor from Movant.  A copy of the Security Agreement is attached hereto as Exhibit "A" and the UCC Financing Statement evidencing Plaintiff's perfected security interest is attached hereto as Exhibit "B".  Plaintiff acknowledges that its purchase money security interest attaches only to portions of the 57 TerraMiners in the possession of ACD, as accessions.

Plaintiff contends that Fortis holds a junior lien on the property in the possession of ACD upon which Plaintiff obtained relief from the stay and that Fortis asserts a security interest in those portions of the 57 TerraMiners in ACD's possession that Plaintiff does not have a lien upon.  Plaintiff contends that ACD does not hold a lien upon the property.

22.    Plaintiff is entitled to a determination as the validity, extent or priority of ACD's asserted lien in and against Debtor's property and assets, and whether ACD has rights superior to Plaintiff and/or Fortis.

## V.  REQUEST FOR INJUNCTIVE RELIEF

23.    To the extent necessary, this Complaint also constitutes a request for injunctive relief to prevent ACD from disposing of property of the Chapter 7 estate in its possession as of the Petition Date and to direct Defendant, ACD, to allow Plaintiff to retrieve the collateral on which the stay has been lifted.

24.  For the reasons stated above, Plaintiff respectfully requests that the Court enter judgment as follows:

    a.  Declaring that Defendant ACD has no lien on the property of the Chapter 7 estate currently in its possession.

    b.  Directing Defendant ACD to allow Plaintiff to retrieve its collateral on which the stay has been lifted or as it may be lifted as to Plaintiff or any other secured creditor that secures stay relief.

    c.  Awarding Plaintiff all fees, costs and other relief to which it may show itself entitled.

WHEREFORE, PREMISES CONSIDERED, Future Electronics Corp. prays that the Court declares that Defendant ACD has no lien as to the property of the Chapter 7 estate in its possession, directing Defendant ACD to allow Plaintiff or other secured creditor to retrieve collateral on which the stay has been lifted and awarding Plaintiff all fees, costs and other relief to which it may show itself entitled.

Respectfully Submitted,

**BARRON & NEWBURGER, P.C.**
1212 Guadalupe, Suite 104
Austin, Texas 78701
(512) 476-9103 x 231 / (512) 476-9253 Facsimile

By:    */s/ Lynn Saarinen*
    Lynn Saarinen,  SBN 17498900

**ATTORNEYS FOR FUTURE ELECTRONICS CORP.**

## SECURITY AGREEMENT

This Security Agreement, made and entered in this ___3rd___ day of ___MARCH___, 20 _l4_, by and between _FUTURE ELECTRONICS CORP_, located at _41 MAIN ST, BOLTON  MA 01740_ (hereinafter "Secured Party") and _CONTERRA, INC._, with chief executive offices located at _SUITE 303, 11130 JOLLYVILLE RD. AUSTIN TX 78759_ and if registered, incorporated in the state of _____DELAWARE_____, (hereinafter "Debtor").

**I      CREATION OF SECURITY INTEREST**

In consideration for the extension of credit, Debtor hereby grants a purchase money security interest in and assigns to the Secured Party the Collateral described in paragraph II below to secure payment and performance of the Obligations (defined below).

**II      COLLATERAL**

To secure payment and performance of the Obligations Debtor hereby grants to Secured Party a continuing purchase money security interest in all inventory, equipment, and goods including all embedded and non-embedded software manufactured by or distributed by Secured Party, whenever sold, consigned or delivered, directly or indirectly, to or for the benefit of Debtor by Secured Party, wherever located, now owned and hereafter acquired including but not limited to all _various electronic components_, and all accessions and products, and accessories, supplies and parts including repossessions and returns; and all proceeds from the sale thereof; all documents including books and records; and all existing or subsequently arising, accounts and accounts receivable, and supporting obligations which may from time to time hereafter come into existence during the term of this Security Agreement.  Secured Party's purchase money security interest is explicitly limited to outstanding obligations between Secured Party and Debtor.

The term "Obligations" as used in this Agreement shall mean and include all indebtedness, liabilities and obligations, liabilities and obligations of any nature, however arising whether monetary or otherwise, now existing or hereafter arising in favor of Secured Party, including any attorney's fees and expenses to which Secured Party may be entitled as further provided in this Agreement.

**III      DEBTOR'S OBLIGATIONS**

A.    The Collateral will not be misused or abused, wasted or allowed to deteriorate, except for the ordinary wear and tear of its intended primary use.

B.    The Collateral will be insured until this security agreement is terminated against all expected risks to which it is exposed.

C.    The Collateral will be kept at the Debtor's place(s) of business set forth herein (unless sold in the ordinary course of Debtor's business pursuant to clause E below), where Secured Party may inspect it at any time upon reasonable notice.

D.    Debtor warrants and covenants:  That the Collateral will be held for use, sale or lease in and for Debtor's business and will be kept only at the principal place of business set forth herein (and Debtor's additional address(es) set forth with its signature, if any). [Note: Deleted text covered in G below]

E.    The Collateral will not be sold, transferred, disposed, or made subject to any paid charge, including taxes of any subsequent interest of a third party created or suffered by Debtor, voluntary or involuntary, unless Secured Party consents in writing to such charge, transfer or disposition; _provided that_, notwithstanding the foregoing, Debtor may sale, transfer, or dispose of inventory in the ordinary course of business without the prior written consent of Secured Party whether or not such inventory, or any part thereof, is Collateral.

F.    Debtor will reimburse Secured Party for any action to remedy a default under this agreement.

G.    Debtor will notify Secured Party in writing 30 days prior of: its opening of any new places of business, or the closing of any existing places of business, or the change of name or nature of the entity including changes to state of incorporation or state of chief executive offices.

H.    Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's interest and obtaining an acknowledgement from the third party that its is holding the Collateral for the benefit of Secured Party.

**IV      DEFAULT**

The following shall constitute a default by Debtor:

_non-payment:_                    Failure to pay the principal or any installment of principal or of interest on the Obligations when due.  In addition, Debtor shall be in default if bankruptcy or insolvency proceedings are instituted by or against the Debtor or if Debtor makes any assignment for the benefit of creditors.

_misrepresentation:_          Misrepresentation or misstatement in connection with, noncompliance with or nonperformance of any of Debtor's obligations or agreements under paragraphs III and VII shall constitute default under this Security Agreement

**V      SECURED PARTY'S RIGHTS AND REMEDIES**

A.    Secured Party may assign this security agreement, and...

(1)    If Secured Party does assign this security agreement, the assignee shall be entitled, upon notifying the Debtor, to performance of all Debtor's obligations and agreements under paragraphs III and VII, and assignee shall be entitled to all of the rights and remedies of Secured Party under this paragraph V, and...

(2)    Debtor will assert no claims or defenses he may have against Secured Party or against its assignee except those granted in this security agreement, and...

**EXHIBIT**

**A**

B.    Upon Debtor's default, Secured Party, shall have all rights set forth under the Uniform Commercial Code, including, but not limited to Article 9, and may exercise his rights of enforcement under the Uniform Commercial Code in force in the State where the Collateral is located or where the UCC Financing Statement is filed and In conjunction with, in addition to or substitution for those rights, at Secured Party's discretion, may

(1)    Declare all unpaid balances due and payable, notwithstanding otherwise stated maturities; and/or,

(2)    Require Debtor to assemble the Collateral and make it available at a place Secured Party designates in writing which is mutually convenient, to allow Secured Party to take possessions or dispose of the Collateral and

(3)    Enter upon Debtor's premises to take possession of, assemble and collect the Collateral or to render it unusable, and

(4)    Waive any default or remedy any default in any reasonable manner without any or all Accounts or other collateral or proceeds, or to sell, transfer, compromise, waiving the default remedied and without waiving any other prior or subsequent default.

## VI    RIGHTS AND REMEDIES OF DEBTOR

Debtor shall have all the rights and remedies before or after default provided in Article 9 of the Uniform Commercial Code in force in the State of where the Collateral is located or where the UCC Financing Statement is filed.

## VII    ADDITIONAL AGREEMENTS AND AFFIRMATIONS

A.    Debtor Agrees and Affirms

(1)    That information supplied and statements made by him in any financial or credit statement or application for credit prior to this security agreement are true and correct and,

(2)    That no financing statement covering the Collateral or its proceeds is on file in any public office and that, except for the purchase money security interest granted in this security agreement, there is no adverse lien, security interest or encumbrance in or on the Collateral, and

(3)    Debtor warrants and covenants that it will keep and maintain its business as presently constituted and will advise Secured Party immediately of any change in the name or nature or location thereof and of any fact or occurrence which does, or with lapse of time could, impair Debtor's ability to perform hereunder. Debtor warrants that all locations of collateral and all corporate, partnership, doing business, trade and individual names are listed below the signature line (hereon) are absolutely accurate and complete and that it will give Secured Party at least thirty (30) days prior written notice of any change thereof, addition thereto or deletion therefrom.

(4)    That if Debtor is also buyer of the Collateral, there are no express warranties unless they appear in writing signed by the seller and there are no implied warranties of merchantability or fitness for a particular purpose in connection with the sale of the Collateral.

B.    Mutual Agreements

(1)    "Debtor" and "Secured Party" as used in this security agreement include the heirs, executors or administrators, successors or assigns of those parties.

(2)    The law governing this secured transaction shall be that of the State where the Collateral is located or where the UCC Financing Statement is filed.

(3)    If more than one Debtor executes the security agreement, their obligations hereunder shall be joint and several.

(4)    This agreement doesn't waive Secured Party's rights under any other agreement that Debtor has signed with the Secured Party.

(5)    Debtor authorizes Secured Party to file a UCC Financing Statement describing the collateral and appoints Secured Party as Debtor's agent and grants Secured Party limited Power of Attorney to sign UCC forms for the purpose of protecting Secured Party's interest.

C.    Form of Debtor's Business

(1)    Debtors business is (circle one);

      ✓a. Registered Organization    b. Unregistered Organization    c. Individual

(a) If a. Registered Organization:  State where Incorporation/Formed  _DELAWARE._

(b) If b. Unregistered Organization: Location of Business (state) or if more than one place of business, "chief executive office" _____.

(c)  If c. Individual: State or States of Residence (include all states) _____, _____, _____, _____.

> - **Registered Organizations include:** Includes corporations, limited liability corporations and limited partnerships.
> - **Unregistered Organizations include:**  Partnerships.
> - **Individuals Include:** Sole Proprietorships

D.    Further Assurances.

(1)    Debtor agrees to execute any further documents, and to take any further actions, reasonably requested by Secured Party to evidence or perfect the purchase money security interest granted herein or to effectuate the rights granted to the Secured Party herein.

(2)    Exact legal name is set forth in the first paragraph of this Security Agreement.

## VIII    PARTIAL INVALIDITY

invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Security Agreement shall be construed as if such invalid, illegal or unenforceable provision had not been contained herein.

IX. **Release of Security Interest**

(a) If there are no outstanding Obligations hereunder or (b) if Debtor has entered into one or more working capital credit facility secured by all or a portion of Debtor's assets, then Secured Party shall, at Debtor's request, execute and deliver to Debtor all instruments and other documents as may be necessary or proper to release the lien on and security interest in the Collateral that has been granted hereunder and file UCC Termination Statements required to terminate any UCC Financing Statements filed in connection with this Agreement.

IN WITNESS WHEREOF, Debtor has executed this Security Agreement as of the date indicated above.

DEBTOR NAME

BY: _____     BY: _____
(Signature and Title)                                      (Signature and Title)

RAVI IYENGAR, CED

ACCEPTED at AUSTIN TX this 3rd day of MARCH , 20 14 .

SECURED PARTY NAME _Future Electronics Corp_

BY: _____  _Regional Credit Manager_
(Signature and Title)

_Charles L Dinovo_

| Additional corporate, partnership, doing business, trade and individual names. (Attach if more than 2) | Additional Locations of Collateral (Attach if more than 4) | | |
|---|---|---|---|
| NATIONAL CIRCUIT ASSEMBLY (Contract Mfr) | SUITE 500, 5812 TRADE CENTER DR | | |
| | 1. Address | | |
| | AUSTIN | TX | 78744 |
| | City, | State, | Zip |
| AUTOMATED CIRCUIT DESIGN (Contract Mfr) | 1250 AMERICAN PKWY | | |
| | 2. Address | | |
| | RICHARDSON | TX | 75081 |
| | City, | State, | Zip |
| | 3. Address | | |
| | City, | State, | Zip |
| | 4. Address | | |
| | City, | State, | Zip |

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
(800) 826-5256 UCC Division

B. E-MAIL CONTACT AT FILER (optional)
ucc@ncscredit.com  DE SOS

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

NCS UCC Services Group
PO Box 24101
Cleveland, OH 44124
USA
(800) 826-5256

**Delaware Secretary of State**
**File Number: 20140899773**
**File Date: 03/07/2014 03:06 PM**
**(This document was electronically filed)**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Cointerra, Inc. | | | |

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11130 Jollyville Road, Suite 303 | Austin | TX | 78759 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Iyengar | Ravi | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11130 Jollyville Road, Suite 303 | Austin | TX | 78759 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Future Electronics Corp. | | | |

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 41 Main Street | Bolton | MA | 01740 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
To secure payment and performance of the Obligations Debtor hereby grants to Secured Party a continuing purchase money security interest in all inventory, equipment, and goods including all embedded and non-embedded software manufactured by or distributed by Secured Party, whenever sold, consigned or delivered, directly or indirectly, to or for the benefit of Debtor by Secured Party, wherever located, now owned and hereafter acquired including but not limited to all various electronic components, and all accessions and products, and accessories, supplies and parts including repossessions and returns; and all proceeds from the sale thereof; all documents including books and records; and all existing or subsequently arising, accounts and accounts receivable, and supporting obligations which may from time to time hereafter come into existence during

Please see attached Addendum Form(s) for Additional Collateral

EXHIBIT
**B**

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
UCC# U150144

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)      International Association of Commercial Administrators (IACA)

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME |
|---|
| Cointerra, Inc. |

OR

| 9b. INDIVIDUAL'S SURNAME | |
|---|---|
| FIRST PERSONAL NAME | |
| ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME |
|---|

OR

| 10b. INDIVIDUAL'S SURNAME |
|---|
| INDIVIDUAL'S FIRST PERSONAL NAME |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) |

| | | | | SUFFIX |
|---|---|---|---|---|
| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME |
|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

the term of this Security Agreement.  Secured Party™s purchase money security interest is explicitly limited to outstanding obligations between Secured Party and Debtor.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut  ☐ covers as-extracted collateral  ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: