**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **Chapter 7** |
| **COINTERRA, INC.,** | § | |
| | § | **Case No. 15-10109-HCM** |
| **Debtor.** | § | |
| | § | |

**APPLICATION OF OPEN-SILICON, INC. FOR**
**ADMINISTRATIVE EXPENSE CLAIM**

TO:    THE HONORABLE H. CHRISTOPHER MOTT
       UNITED STATES BANKRUPTCY JUDGE

COMES NOW, Open-Silicon, Inc. ("OSI"), creditor and party-in-interest in the above-caption chapter 7 case, by and through its undersigned counsel, hereby files this Application for Administrative Expense Claim ("Application"), and respectfully states as follows:

**JURISDICTION & VENUE**

1.      This Court has jurisdiction over the subject matter of this Application pursuant to 28 U.S.C. § 1334. The subject matter of this Application is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (B). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**BACKGROUND**

2.      On January 24, 2015 ("Petition Date"), Cointerra, Inc. ("Debtor") filed its Voluntary Petition ("Voluntary Petition") for relief under Chapter 7 of the Bankruptcy Code.

3.      Randolph N. Osherow is the duly appointed Chapter 7 Trustee ("Trustee").

4.      On March 19, 2015, Fortis Benefits, LLC ("Fortis") filed a Motion for Relief from the Automatic Stay [Docket No. 28] ("Stay Relief Motion"). In its Stay Relief Motion, Fortis requested relief to proceed as a secured creditor against its alleged collateral, which was

generally alleged to be all of the Debtor's assets that were not subject to the prior lien of Future Electronics.

5.      On April 2, 2015, OSI filed its Objection to Fortis's Stay Relief Motion [Docket No. 38] ("Objection"). In its Objection, OSI re-characterized Fortis's interest in the Debtor's assets as equity. OSI exposed certain provisions contained Fortis's pre-petition transaction documents with the Debtor that triggered conversion of Fortis's interests from debt security into common equity. Specifically, Debtor's filing of its Voluntary Petition constituted a "change of control" within the defined terms of the parties' transaction documents.  As a result, Fortis was no longer a secured creditor of Debtor; therefore, it had no standing to pursue the relief requested in its Stay Relief Motion.  *See* Objection at ¶ 17, p. 4.

6.      As a result of OSI's Objection, Fortis and OSI entered negotiations to resolve the disputes arising from the allegations in Fortis's Stay Relief Motion and OSI's Objection.  The Trustee joined the negotiations thereafter.   Ultimately, the parties reached an agreement resolving their disputes over whether Fortis had standing and grounds to seek relief from the automatic stay.   The Court entered an order on May 18, 2015, indefinitely abating all proceedings to consider any remaining relief requested in Fortis's Stay Relief Motion.

7.      The parties then documented their resolution in the Trustee's motion to approve compromises pursuant to Bankruptcy Rule 9019, which was filed on June 9, 2015 [Docket No. 68] ("9019 Motion").  On July 14, 2015, the Court entered an order approving the terms of the parties' agreement, as detailed in the Trustee's 9019 Motion (the "9019 Settlement").  *See* Docket No. 72.

8.      In addition, the 9019 Settlement benefitted the bankruptcy estate in the following ways.

(i)     Awarded $35,000 of cash to the Trustee for potential distribution to unsecured creditors, despite Fortis's alleged lien in the same. *See* 9019 Motion, Docket No. 68-1 at p. 3.

(ii)    Provided for the estate to receive various negotiated percentages of net recoveries from other collateral pools subject to Fortis's alleged. *Id.*

(iii)   Saved the estate from continuing to incur administrative expenses by avoiding potentially protracted litigation of the contested issues related to the Stay Relief Motion. *See generally* 9019 Motion, Docket No. 68-1.

## ARGUMENT & AUTHORITY

9.      Section 503(b)(3)(D) of the Bankruptcy Code governs the present Application, and it provides in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, ***including*** –
>
> > (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
> >
> > > (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

11 U.S.C. § 503(b)(3)(D) (emphasis added).

10.     On September 21, 2015, the Sixth Circuit held that creditors whose efforts substantially benefitted the bankruptcy estate in a chapter 7 case are entitled to administrative-expense priority. *See Mediofactoring v. McDermott (In re Connolly N. Am., LLC),* 802 F.3d 810 (6th Cir. 2015). In so holding, the Sixth Circuit cited "the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction" and stated that "statutory language is

the keystone on which all other analysis relies." *Id*. at 815. If the statutory language is clear, the court need not look further, according to the Sixth Circuit. *See id*. With those principles in mind, the Sixth Circuit turned to the specific issue of whether the reference to chapter 9 and 11 and the omission of chapter 7 in § 503(b)(3)(D) is a *per se* bar to the recovery of "substantial-contribution" claims in chapter 7 cases. *See id*. 815 – 16.

11.     There is no *per se* bar in § 503(b)(3)(D) against substantial-contribution claims in chapter 7 cases, according to the Sixth Circuit. *See id*. at 819. Relying on statutory construction, the Sixth Circuit focused on § 503(b)(3)(D)'s use of the word "including" and reasoned that "by using the term 'including' in the opening lines of the subsection, Congress built a mechanism into § 503(b) for bankruptcy courts to reimburse expenses not specifically mentioned in § 503(b)'s subsections." *Id*. at 816. Denying creditors reimbursement of administrative expenses in such circumstances not only would disincentive participation in the bankruptcy process, it would also impugn the fundamental notion of bankruptcy as equitable relief. *See id.* at 819. So, where "reimbursement of administrative expenses properly follows from the totality of the pertinent facts, interpretation of the statutory language, and relevant equitable considerations," § 503(b) allows for "substantial-contribution" claims in chapter 7 cases, including reimbursement of attorney's fees for creditors whose efforts substantially benefit the bankruptcy estate. *Id.* at 815.

12.     Services that provide a substantial contribution to an estate are those that foster and enhance rather than retard or interrupt the progress of a bankruptcy case. *See In re R.L. Adkins Corp.,* 505 B.R. 770, 780 (Bankr. N.D. Tex. 2014). In determining whether a claim for substantial contribution has been established, the Court should weigh the cost of the claimed fees and expenses against the benefits conferred on the estate that flow directly therefrom, with

benefits flowing to only a portion of the estate or to limited classes of creditors being necessarily diminished in weight. *See id.* The factors considered in evaluating this determination are set forth below.

(a)    Whether the services involved in the contribution provided a benefit to the estate.

(b)    Whether the services involved in the contribution were undertaken just for the applicant alone or for the benefit of all the parties in the case.

(c)    Whether the applicant would have undertaken the same approach absent the expectation of compensation from the bankruptcy estate.

(d)    Whether the benefit conferred through the applicant's contribution exceeds the cost which the applicant seeks to assess against the estate.

(e)    Whether the efforts of the applicant were duplicative of efforts undertaken by statutory fiduciaries.

(f)    Whether the applicant profited from the situation or rather faced substantial loss if it had not undertaken the approach that it did.

(g)    Whether the applicant had a negative effect on the case, such as making questionable objections to pleadings filed by the debtor or engaging in improper conduct in some other fashion which caused the debtor to incur costs or which delayed resolution of the case.

*Id.* at 780-81.

13.    Here, OSI is entitled to reimbursement of its reasonable attorney's fees as an administrative expense priority claim for the amounts incurred as a result of OSI's participation in procuring the 9019 Settlement. There were no other objections filed to the Stay-Relief Motion, except OSI's Objection. If not for OSI's Objection, Fortis would have foreclosed on virtually all of the bankruptcy estate's assets and, therefore, taken 100% of the liquidation

proceeds.  Instead, the bankruptcy estate now has approximately $35,000 in cash plus the right to various percentages of the recoveries from other physical assets, intellectual property, and claims in certain California litigation, all of which would have been lost had the OSI Objection not been filed.

14.    In the 9019 Settlement, the parties recognized that OSI's Objection was the impetus behind the settlement approved by this Court.  Thus, the parties expressly acknowledged and agreed that:

> a. OSI incurred expenses after the Petition Date in investigating, preparing, and prosecuting the OSI Objection [to the Stay-Relief Motion]; and
>
> b. Certain of such expenses were (i) actual and instrumental to the preservation of the Cointerra Chapter 7 Estate and (ii) necessary and instrumental in enabling the Cointerra Trustee to secure the benefits [received in the settlement].

*See* 9019 Motion, Docket No. 68-1 at ¶ 5, p. 4.

15.    It is undisputed that there is direct and material benefit to the estate provided by the 9019 Settlement.  It is undisputed that such benefit would not have been received but for OCI's participation in the filing of the OSI Objection and negotiation and documentation of the 9019 Settlement.  It is also undisputed that OSI absorbed 100% of its costs incurred in preparing and filing the OSI Objection, and significant costs in negotiating and documenting the 9019 Settlement.  Given the benefits received by the OSI Objection and 9019 Settlement, which will be shared by all <u>allowed</u> unsecured creditors, it would be inequitable for OSI to bear 100% of its costs in procuring tangible benefits to the estate.  To find otherwise would provide a windfall to those creditors who did participate in objection-to-stay-relief and settlement process.

16.    OSI will share the benefits of the 9019 Settlement with the estate's creditors. However, before such benefits are distributed to all unsecured creditors, OSI should be

reimbursed for the reasonable costs and expenses that it incurred and paid to produce the 9019 Settlement.  The estate is holding funds available for distribution to creditors that it would not be holding but for OSI's efforts.  Such funds are the tangible benefit and result of OSI's substantial contribution to the bankruptcy estate in this case.  Accordingly, under § 503(b)(3)(D), OSI is entitled to an allowed administrative-expense claim for its reasonable attorneys' fees incurred in conferring the substantial contribution to the estate from the 9019 Settlement.  The amount of OSI's administrative expense claim may be determined by the Court upon the submission of affidavits, time records and other appropriate evidence.

## **RELIEF REQUESTED**

WHEREFORE,  PREMISES  CONSIDERED,  OSI  respectfully  requests  that  the  Court grant this Application and award OSI an administrative expense priority claim in the amount of the  reasonable  attorneys'  fees  incurred  by  OSI  arising  from  the  Objection  and  the  9019 Settlement, as may be determined by the Court upon the submission of affidavits, time records and other appropriate evidence.

Dated: April 19 , 2016

Respectfully Submitted,

GARDERE WYNNE SEWELL LLP

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone: 214-999-3000
Facsimile: 214-999-4667
mhelt@gardere.com

ATTORNEYS FOR OPEN-SILICON, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 19, 2016, a true and correct copy of the foregoing Application was served on the parties listed below via the methods of service noted herein.

*/s/ Marcus A. Helt*
Marcus A. Helt

| | |
|---|---|
| Lynn Saarinen<br>Barron & Newburger, P.C.<br>1212 Guadalupe, Suite 104<br>Austin, Texas 78701<br>via CM/ECF | Randolf Osherow<br>342 W. Woodlawn, Suite 100<br>San Antonio, Texas 78212<br>via CM/ECF |
| Steve Turner<br>Barrett Daffin Frappier Turner & Engel, LLP<br>610 West 5th Street, Suite 602<br>Austin, Texas 78701<br>via CM/ECF | E. Paul Keiffer<br>Coats Rose, PC<br>Republic Center, Suite 4150<br>325 N. St. Paul Street<br>Dallas, Texas 75201<br>via CM/ECF |
| Adam Swick<br>Reid Collins & Tsai LLP<br>1301 S. Capital of Texas Hwy<br>Building C, Suite 300<br>Austin, Texas 78746<br>via CM/ECF | CoinTerra, Inc.<br>c/o counsel of record:<br>Timothy A. Davidson, II<br>Andrews & Kurth L.L.P.<br>600 Travis, Suite 4200<br>Houston, Texas 77002<br>via CM/ECF |
| Office of the U.S. Trustee<br>903 San Jacinto Boulevard, Room 230<br>Austin, Texas 78701<br>via CM/ECF | Automated Circuit Design<br>1250 American Parkway<br>Richardson, Texas 75081<br>via First Class Mail |
| Laurence W. Goldberg<br>Director, Revenue Management<br>BDO USA, LLP<br>4135 Mendenhall Oaks Pkwy, Suite 140<br>High Point, NC 27265<br>via First Class Mail | Kimberly A. Walsh<br>Assistant Attorney General<br>Attorney General's Office<br>Bankruptcy & Collections Division<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>via First Class Mail |
| Willard Proctor, Jr.<br>Willard Proctor, Jr., P.A.<br>2100 Wolfe Street<br>Little Rock, AR 72202-6258<br>via First Class Mail | |